[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

Nos. 98-5206 & 98-5683

_____

D.C. Docket No. 96-2040-CV-DMM

AMERICAN FIRST FEDERAL, INC., a Nevada Corporation,

Plaintiff-Counter-Defendant-Appellee,

versus

LAKE FOREST PARK, INC., a Florida
Corporation, MICHAEL VAZQUEZ, individually,
ROSA B. VAZQUEZ, individually, and OSMARA
VAZQUEZ, individually,

Defendants-Counter-Claimants-Appellants,

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

**(December 23, 1999)**

Before EDMONDSON and BARKETT, Circuit Judges, and COHILL[*], Senior
District Judge.

BARKETT, Circuit Judge:

Lake Forest Park, Inc., Michael Vazquez, Rosa Vazquez, and Osmara

_____

[*]Honorable Maurice B. Cohill, Jr., Senior U.S. District Judge for the Western District of
Pennsylvania, sitting by designation.

Vazquez (collectively "Lake Forest") appeal the district court's entry of summary judgment in favor of American First Federal ("AFF") on AFF's action to recover on a promissory note. On appeal, Lake Forest argues (1) that the district court erred in granting judgment on the promissory note because it was not enforceable under Florida law, and (2) that the district court erred in failing to consider Lake Forest's affirmative defense against AFF. We affirm.

## BACKGROUND

In 1987, Lake Forest obtained a $9,000,000 construction loan from the Professional Bancorp Mortgage Company ("PBMC") to finance the development of an apartment complex. In connection with the loan, PBMC required Lake Forest to obtain a letter of credit in favor of PBMC in the amount of $181,630 to ensure the availability of funds to pay insurance and tax accruals on the property as they came due. On March 17, 1988, Lake Forest secured the letter of credit from PBMC's affiliate Professional Savings Bank ("Professional"), and in return executed a promissory note ("note") for $181,630, payable on demand to Professional, with interest accruing at the rate of 9.5% per year. Michael Vazquez, the President of Lake Forest, and Camilo Padreda, each personally guaranteed the note, and Rosa and Osmara Vazquez pledged a $100,000 certificate of deposit as collateral.

By the end of March 1990, per Lake Forest's admission in paragraph 8 of its Answer, the entire proceeds of the letter of credit had been drawn by PBMC. The Department of Housing and Urban Development, which had previously approved Lake Forest's application for a commitment to insure the construction loan, subsequently failed to issue a final endorsement of the loan. Professional, to whom PBMC had assigned the loan, then refused to fund the remaining balance. In July 1990, Professional went into receivership, and the Resolution Trust Corporation ("RTC") was appointed receiver. In June 1995, the RTC sold the note and all rights arising thereunder to AFF.

On December 11, 1996, AFF filed its complaint against Lake Forest for the monies due under the promissory note, and sought to foreclose upon the collateralized certificate of deposit. Lake Forest counterclaimed, asserting that Professional had wrongfully failed to release the balance of the construction loan proceeds, thereby causing Lake Forest to default on the promissory note. Thus, Lake Forest argued, the damages flowing from Professional's failure to release the loan proceeds should be offset against any recovery awarded to AFF. The district court declined to consider Lake Forest's set-off claim because Lake Forest had not exhausted the administrative remedies provided for under the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101-73,

103 Stat.183 (codified as amended in sections of 12 U.S.C.), and granted summary judgment to AFF for damages in the amount of $456,421.39, attorneys fees and costs, and foreclosure on the certificate of deposit.  Lake Forest appeals these rulings.

We review the district court's conclusions of law *de novo*.  Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Irby v. Bittick 44 F.3d 949, 953 (11th Cir. 1995) (citing Fed. R. Civ. P. 56(c)).

DISCUSSION

A.      Enforceability of the Promissory Note

On appeal, Lake Forest first argues that the district court erred in granting summary judgment on the note because AFF had not obtained the necessary Florida documentary tax stamps for the note prior to commencement of the district court proceedings.  Under Section 201.08(1) of the Florida Statutes, a note is not enforceable until the requisite documentary tax has been paid.  Fla. Stat. Ann. § 201.08(1) (West 1999).  During the proceedings before the district court, the original loan documents apparently were misplaced and were not produced until the summary judgment hearing.  After the district court entered summary

judgment, but prior to the entry of final judgment, Lake Forest moved to vacate the order granting summary judgment on the grounds that AFF had not obtained the documentary tax stamps necessary to enforce the promissory note. With the court's permission, AFF paid the tax, and the court then entered final judgment.

The plain language of Section 201.08(1) provides that an "instrument shall not be enforceable in any court of this state . . . unless and until the tax due thereon . . . has been paid." However, there is nothing in the statute which precludes the entry of judgment once the taxes have been paid. As the Florida courts have recognized, "the statute [does not] deny enforceability merely because the required documentary stamps have been belatedly purchased and affixed." Klein v. Royale Group, Ltd. 578 So. 2d 394, 395 (Fla. Dist. Ct. App. 1991), see also Owens v. Blitch, 443 So. 2d 140, 141 (Fla. Dist. Ct. App. 1984) ("Nothing in Florida law would deny enforceability of promissory notes merely because documentary stamps have been belatedly affixed."); Silber v. Cn'R Indus., 526 So. 2d 974, 977 (Fla. Dist. Ct. App. 1988) ("[O]nce the tax has been paid and the documentary stamps affixed, however belatedly, the note becomes enforceable according to its terms."). Thus, the district court correctly determined that the payment of the tax after the commencement of the lawsuit but before final judgment did not bar the entry of final judgment.

We also find no merit in Lake Forest's alternative argument that the note was unenforceable because AFF did not pay a penalty for the delayed payment of the tax. Here, again, the plain language of Section 201.08 is conclusive. This section clearly precludes enforcement of the note until the tax due thereon has been paid. A penalty for late payment is provided for separately in section 201.17(2).[1] The statute does not link payment of that penalty to enforceability of the note, and nothing in the Florida case law supports such a construction. Hence, AFF's failure to pay a penalty did not bar enforcement of the note.

B.      Lake Forest's Affirmative Defense

Having determined that AFF was entitled to recover on its complaint, we turn to the question of whether Lake Forest is entitled to a set-off resulting from any viable affirmative defense. We note initially that because AFF has admitted that it is not a holder in due course, Lake Forest is entitled to assert all of the

---

[1] Section 201.17(2) of the Florida Statutes provides that "[i]f any document, instrument, or paper upon which the tax under this chapter is imposed, upon audit or at time of recordation, does not show the proper amount of tax paid, or if the tax imposed by this chapter on any document, instrument, or paper is not timely reported and paid as required by s. 201.133, the person or persons liable for the tax upon the document, instrument, or paper shall be subject to . . . (b) A specific penalty added to the tax in the amount of 10 percent of any unpaid tax if the failure is for not more than 30 days, with an additional 10 percent of any unpaid tax for each additional 30 days, or fraction thereof, during the time which the failure continues, not to exceed a total penalty of 50 percent, in the aggregate, of any unpaid tax. . . . " Fla. Stat. Ann. § 201.17(2) (West 1999).

-6-

defenses, including counterclaims and set-offs, that it might have asserted against any original party to the note.[2]  See United States v. Second Nat. Bank of North Miami, 502 F.2d 535, 546 (5th Cir.), cert. denied 421 U.S. 912 (1974).  In this regard, Lake Forest asserts that Professional's refusal to fund the $793,325 balance of the construction loan caused Lake Forest to default on its obligations under the note and on its obligations to contractors and subcontractors, and that these damages should be offset against any recovery available to AFF.

Lake Forest initially presented this assertion as a counterclaim and later asked the court to consider it as an affirmative defense, which the court is permitted to do under Federal Rule of Civil Procedure 8(c).  See Fed. R. Civ. P. 8(c) ("When a party has mistakenly designated a defense as a counterclaim . . . the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation.").  The district court did consider Lake Forest's assertion as an affirmative defense, but nevertheless held that because Lake Forest did not first submit its claim to the RTC under the administrative scheme for adjudicating claims detailed in 12 U.S.C. § 1821(d), it had not exhausted its administrative remedies, and thus the court did not have subject matter jurisdiction to consider its

---

[2]A holder in due course takes an instrument free from defenses which might have been available between the original parties.  See U.C.C. § 3-305 (1972);  Fla. Stat. Ann. § 673.3051(2) (West 1993).

-7-

claim.[3]

Section 1821(d)(13)(D) provides:

> Except as otherwise provided in this subsection, no court shall have jurisdiction over–
>> (i) any claim or action for payment from, or any action seeking a determination of the rights with respect to, the assets of any depository institution for which the [RTC] has been appointed receiver, including assets which the [RTC] may acquire from itself as such receiver; or
>> (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C.A. § 1821(d)(13)(D) (West 1989).  Section 1821(d)(6) permits claimants to seek judicial review after a claim has been disallowed or if 180 days expire without a determination by the RTC.

As the Third Circuit has parsed it, the plain language of this section thus divests the district court of jurisdiction over requests for relief which can be characterized as:

> (1) claims for payment from assets of any depository institution for which the RTC has been appointed Receiver;
> (2) actions for payment from assets of such depository institutions;
> (3) actions seeking a determination of rights with respect to the assets of such depository institutions; and
> (4) a claim relating to any act or omission of such institution or the

---

[3]AFF, having purchased the note from the RTC, stands in the shoes of the RTC and acquires its protected status under FIRREA.  See First Union Nat. Bank of Fla. v. Hall, 123 F.3d 1374, 1379 (11th Cir. 1997); FDIC v. Newhart, 892 F.2d 47, 50 (8th Cir. 1989).  Thus, if Lake Forest is barred from asserting this claim against the RTC, it is similarly barred from asserting it against AFF.

RTC as receiver.

National Union Fire Ins. v. City Sav., 28 F.3d 376, 393 (3d Cir. 1994). There is consensus among the circuits that all claims that fall into these categories are subject to the exhaustion requirement, whether they are asserted as initial claims or as counterclaims. See Stamm v. Paul, 121 F.3d 635 (11th Cir. 1997); see also RTC v. Midwest Fed. Sav. Bank of Minot, 36 F.3d 785,791 (9th Cir. 1993) ("We agree . . . with other courts that § 1821(d)(13)(D) divests the district courts of jurisdiction over both claims and counterclaims against the RTC until the claimants have exhausted the administrative procedures created by FIRREA."); National Union Fire Ins. v. City Sav., 28 F.3d at 394 ("Of course, if in addition to raising defenses or affirmative defenses to an action or a claim, a party also raises counterclaims, such counterclaims would fall under § 1821(d)(13)(D)'s jurisdictional bar because a counterclaim is a 'claim.'").

Likewise, all three circuit courts that have addressed the question have held that affirmative defenses are not subject to the requirements of exhaustion under Section 1821(d)(13)(D). The Third Circuit in National Union resolved the issue by recognizing the definitional differences between affirmative defenses and claims. It reasoned that a defense, "which is offered and alleged by the [defendant] as a reason in law or fact why the plaintiff should not recover or establish what he seeks

[or is] put forward to diminish plaintiff's cause of action or defeat recovery," is quite different from a claim, which is "essentially an action which asserts a right to payment." 28 F.3d at 393. Thus, National Union held that the exhaustion requirement of Section 1821 did not apply to the affirmative defense of rescission when it was asserted as a defense to the RTC's counterclaim.[4] Id.

The Ninth Circuit in RTC v. Midwest Fed. Sav. Bank of Minot, drew from both the plain meaning of Section 1821(d)(13)(D) and the statute as a whole to support its conclusion that the district court has subject matter jurisdiction over affirmative defenses not previously asserted through the claims process. 36 F.3d at 793. The Court noted that Section 1821(d)(3)(B) and (C) require the RTC to publish and mail notice to the depository institution's creditors of the time period within which they must present their claims to the receiver. Quoting RTC v. Conner, 817 F.Supp. 98 (W.D. Okla. 1993), the Court reasoned that claimants who were not creditors of the failed institution, and who would not have received such notice, should not therefore be barred from raising their defenses to RTC-initiated

---

[4] The Court based its holding on the plain meaning of Section 1821(d)(13)(D), but noted that constitutional concerns would dictate the same result. National Union, 28 F.3d at 394 ("If parties were barred from presenting defenses and affirmative defenses to claims which have been filed against them, they would not only be unconstitutionally deprived of their opportunity to be heard, but they would invariably lose on the merits of the claims brought against them. Such a serious deprivation of property without due process of law cannot be countenanced in our constitutional system.").

lawsuits. Moreover, because parties could not know what defenses they might potentially interpose until the claims against them had been lodged, it would lead to "patently absurd consequences" to read Section 1821(d)(13)(D) to require parties to file hypothetical defenses against suits which might never be brought. Midwest Federal, 36 F.3d at 792. Thus, the Court held that a district court is not divested of jurisdiction over the affirmative defense of mutual mistake in a contract claim brought by the RTC when, prior to being sued by the RTC, the defendant was not a creditor of the RTC and had no independent basis for filing a claim against the RTC.

The Tenth Circuit adopted the rationale of Midwest Federal, and likewise held that both the plain meaning of the words, and reference to the statute as a whole, supported the conclusion that the terms "claim" and "action" as used in Section 1821(d)(13)(D) do not encompass affirmative defenses. RTC v. Love, 36 F.3d 972, 978 (10th Cir. 1994).

We agree with our sister courts that an affirmative defense, that is, "a response to a plaintiff's claim which attacks the plaintiffs *legal* right to bring an action," Black's Law Dictionary 38 (6th ed. 1991), is not subject to the administrative exhaustion requirement of Section 1821(d)(13)(D). However, a court must look beyond the nomenclature of a request for relief to ascertain

-11-

whether it is a true affirmative defense or is, in actuality, a claim requiring exhaustion as a prerequisite to jurisdiction. Whether a request for relief is titled an affirmative defense or a counterclaim is not dispositive to the question of subject matter jurisdiction. The germane question is whether the remedy sought by a party, regardless of its label, is encompassed by Section 1821(d)(13)(D), that is, whether the assertion is in reality a claim against the assets or actions of the failed institution or the RTC as receiver.

We agree with the district court that under Federal Rule of Civil Procedure 8(c) it had jurisdiction to recharacterize Lake Forest's counterclaim as an affirmative defense. However, under the facts here, such a characterization would not be accurate. Lake Forest's claim for damages stemming from Professional's refusal to fund the balance of the construction loan is clearly a claim against the assets of the failed institution rather than a defense which attacks AFF's legal right to bring the action. Because Lake Forest is asserting a claim rather than an affirmative defense, it was obliged to exhaust its administrative remedies under Section 1821(d) before filing suit in federal court. It did not do so. The district court therefore did not have jurisdiction over Lake Forest's claim against AFF, and it properly declined to consider the claim.

For the foregoing reasons the decision of the district court is AFFIRMED.

-12-