## A11A1017. ARROW FINANCIAL SERVICES, LLC v. WRIGHT.
(715 SE2d 725)

ANDREWS, Judge.

This appeal is taken from the trial court's entry of judgment in favor of Mary Wright in the amount of $22,502.85 after a jury verdict on Wright's counterclaims against Arrow Financial Services, LLC under the Fair Debt Collection Practices Act, 15 USC § 1692 et seq. ("the federal Act") and the Fair Business Practices Act, OCGA § 10-1-390 et seq. ("the Georgia Act"). At the close of Arrow's evidence, the trial court granted Wright's motion for directed verdict concerning Arrow's own claim that Wright owed it money as the assignee of a debt originally payable to Empire Flooring, which had replaced Wright's floor the day after she cancelled a contract to do so. On appeal, Arrow asserts that the trial court erred when it excluded Arrow's business records of the debt and when it charged the jury concerning the federal Act. We affirm.

"The jury is the final arbiter of the facts, and the verdict must be construed by the trial and appellate courts in the light most favorable to upholding the jury verdict." (Citation and punctuation omitted.) *Wilmock, Inc. v. French*, 185 Ga. App. 259, 261 (1) (363 SE2d 789) (1987). By contrast, and because the trial court granted a directed verdict as to Arrow's claim of indebtedness, we determine whether there is "no conflict in the evidence as to any material issue" and whether "the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict" on that claim. OCGA § 9-11-50 (a).

So viewed, the record shows that in January 2008, Arrow brought an action as the assignee of "Home Value/GE Money Bank" to collect a debt in the amount of $7,353.92 plus interest and costs. Wright answered and counterclaimed under the federal Act and the Georgia Act for wrongs including Arrow's false and misleading statements made in the course of its attempts to collect the consumer debt, including its assertion that it was a valid assignee. Wright's counterclaim prayed for statutory damages and actual damages under the federal Act as well as treble damages under the Georgia Act.

Two witnesses testified at trial. The first was Tonya Easterling, an account representative responsible for charged-off accounts acquired by Arrow. When Arrow proffered a series of statements sent

by GE Money Bank and its predecessors as evidence of the debt's origins, Wright objected, and the trial court authorized Wright to examine the witness about her knowledge of the documents before rendering a decision on their admissibility. Easterling testified that she was not employed by GE Money Bank and that she had no personal knowledge of the means by which the documents were created. Easterling also testified that Arrow had not obtained the documents at the time it began its efforts to collect the debt. Based on this testimony, the trial court sustained Wright's objection to the documents' admission on the ground that Easterling did not have the personal knowledge necessary to authorize admission of the documents under the business records exception to the hearsay rule.

At the close of this testimony, Wright moved for a directed verdict, which was granted on the grounds that Arrow had failed to prove either the original contract or a valid chain of assignments from Empire to Arrow. The trial then proceeded on Wright's counter-claim.

Wright testified that in July 2004, representatives of Empire Flooring "cold-called" her, came to her house, and convinced her to sign a contract to replace the hardwood flooring in her foyer and kitchen with laminate flooring. After the Empire representative left, but on the same day she signed the contract, Wright checked prices at other stores and determined that Empire's were three times higher. Wright then called back Empire and, with the agreement of the Empire representative, cancelled the contract. Despite this, Empire installers came to Wright's house the following day while she was at work. After a babysitter let them into the house, the installers removed Wright's hardwood floors and installed laminate ones.

Wright placed a number of calls and a certified letter the next day to Empire advising them that she had cancelled the order and was disputing any charges. In August 2004, however, she began receiving statements of her indebtedness in the amount of $3,900 from "Empire/GE Capital Con CC." Wright disputed these charges, which were noted as due in August 2005. Sometime later, Arrow began writing and calling Wright at home and at work (the Internal Revenue Service), demanding payment. These calls and letters continued well after Wright first advised Arrow that she was disputing the charges. The IRS eventually placed a letter in Wright's personnel file about financial responsibility as a result, and Wright's credit was affected. By March 2007, the amount Wright owed to an entity now known as "GE Money Bank" had grown to $7,353.92. It was at this point that GE Money Bank, which had apparently obtained the account from entities including "GE Capital Consumer Card Co. and Monogram Credit Card Bank of Georgia," executed a bill of sale of the account to Arrow.

At the charge conference, Arrow offered a charge that a debt collector would not be liable for violation of the federal Act "if it shows by a preponderance of the evidence that (1) it did not intend to violate the Act and (2) the violation resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." See *Smith v. Transworld Systems*, 953 F2d 1025 (6th Cir. 1992). Arrow's proposed charge also specified that if the debt collector offered evidence that it was unaware of the violation, "the burden shifts" to the alleged debtor to show that the collector "was indeed acting intentionally," and that to discharge this burden, an alleged debtor would be "required to present evidence creating a reasonable inference, [and] not a mere possibility[,] of intent."

After noting the possibility that Arrow might have made a bona fide error in believing that the bill of sale from the GE entity justified its efforts, the trial court delivered the following charge:

> A debt collector may not be held liable in any action brought under the Act if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error, notwithstanding the maintenance of procedures reasonably adapted to avoid the error. A debt collector asserting bona fide error as a defense must show by a preponderance of the evidence that its violation of the Act, one, was not intentional; two, was a bona fide error; and three, occurred despite the maintenance of procedures reasonably adapted to avoid any such error. The failure by the debt collector to meet any one of these requirements is fatal to the debt collector's defense.

The trial court also defined "bona fide error" as one "made in good faith, a genuine mistake as opposed to a contrived mistake," and that to be considered bona fide, a debt collector's mistake "must be objectively reasonable." Arrow preserved its objection to this charge.

The jury awarded Wright actual damages of $6,500.95 and statutory damages of $1,000, and specifically found that Arrow had intended to violate the federal Act. The trial court then entered judgment on the verdict, including a trebling of actual damages under the Georgia Act for total damages of $22,502.85, but reserving the issue of attorney fees. This appeal followed.

1. Arrow first claims that the trial court erred when it excluded its business records of the debt and that it was harmed by the error. We disagree.

"The doctrine of privity of contract requires that only parties to a contract may bring suit to enforce it." *Scott v. Cushman &*

*Wakefield of Ga.*, 249 Ga. App. 264, 265 (547 SE2d 794) (2001); see also OCGA § 9-2-20 (a). "A party may assign to another a contractual right to collect payment, including the right to sue to enforce the right. *But an assignment must be in writing in order for the contractual right to be enforceable by the assignee.*" (Citations and punctuation omitted; emphasis supplied.) *Wirth v. Cach, LLC*, 300 Ga. App. 488, 489 (685 SE2d 433) (2009).

Pretermitting whether the trial court erred in excluding Arrow's records of the debt, Wright's uncontradicted testimony showed that the Empire representative agreed to cancel the contract before the debt was incurred. Even assuming that the debt survived Wright's cancellation, moreover, the proffered records concerning the history of the debt before its sale to Arrow show only the names of a number of entities associated with the attempt to collect it. This string of corporate names is insufficient as a matter of law to prove a chain of valid written assignments of the debt from Empire to GE Capital Consumer Credit Card Company to GE Money Bank, and thus to Arrow. It follows that any possible error in excluding these records was harmless. See *Scott*, 249 Ga. App. at 266 (reversing grant of summary judgment and remanding for entry of judgment in favor of debtor when successor creditor had failed to provide evidence of "written agreements which could complete the chain of assignments" from previous creditor); *Wirth*, 300 Ga. App. at 491 (reversing grant of summary judgment to bill collector where there was no evidence completing the chain of assignment to that collector).

2. The Eleventh Circuit has recently summarized the federal law's purposes as follows:

> The Fair Debt Collection Practices Act was enacted by Congress "to eliminate abusive debt collection practices by debt collectors" and "to protect consumers against debt collection abuses." 15 U.S.C. § 1692 (e). Congress found abusive practices by debt collectors to be "serious and widespread." *Russell v. Equifax A.R.S.*, 74 F3d 30, 33 (2d Cir. 1996). The Act provides a civil cause of action against any debt collector who fails to comply with the requirements of the Act, including § 1692e (11). See 15 U.S.C. § 1692k (a). A debt collector can be held liable for an individual plaintiff's actual damages, statutory damages up to $1,000, costs, and reasonable attorney's fees. 15 U.S.C. § 1692k (a) (1)-(3).

*Edwards v. Niagara Credit Solutions*, 584 F3d 1350, 1352 (11th Cir. 2009). The Act provides debt collectors with a "bona fide error" defense, "which insulates them from liability even when they have

failed to comply with the Act's requirements." Id. The statutory defense provides:

> A debt collector may not be held liable in any action brought under this [subchapter] if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 USC § 1692k (c). Thus a debt collector asserting the bona fide error defense "must show by a preponderance of the evidence that its violation of the Act: (1) was not intentional; (2) was a bona fide error; and (3) occurred despite the maintenance of procedures reasonably adapted to avoid any such error." *Edwards*, 584 F3d at 1352-1353, citing *Johnson v. Riddle*, 443 F3d 723, 727-728 (10th Cir. 2006). "The failure to meet any one of those three requirements is fatal to the defense." Id. at 1353.

The delivered charge accurately recited both the statutory defense and a virtually identical restatement of it from federal case law. The trial court was within its rights to refuse further explanation as either confusing or unnecessary.

*Judgment affirmed. Phipps, P. J., and McFadden, J., concur.*

DECIDED JULY 13, 2011 —
RECONSIDERATION DENIED JULY 29, 2011 — 

*McGuireWoods, Kevin C. Watters, H. Wayne Phears*, for appellant.

*Charles B. Pekor, Jr., David A. Cox*, for appellee.

