**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER, and RAY, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**May 22, 2013**

# In the Court of Appeals of Georgia

A13A0175. BOBICK v. COMMUNITY & SOUTHERN BANK.

BARNES, Presiding Judge.

This appeal arises out of a dispute over a promissory note executed by Appellant Sally Bobick in favor of First National Bank of Georgia ("First National"). Contending that Bobick had defaulted on her loan obligations, First National filed the present action against her for breach of the note, and she answered and asserted several counterclaims against the bank and its CEO. First National failed while the litigation was pending, and the Federal Deposit Insurance Corporation ("FDIC") was appointed as receiver for the bank. The FDIC assigned and transferred certain assets of First National to Appellee Community & Southern Bank ("CSB"). The trial court subsequently granted summary judgment to CSB on the claims for breach of the note, dismissed Bobick's counterclaims, and entered final judgment in favor of CSB.

On appeal, Bobick contends that the trial court erred in granting CSB's motions to dismiss and for summary judgment because CSB was never properly substituted as the plaintiff and thus was never made a proper party to the suit. Bobick further contends that the trial court erred in granting CSB's motion for summary judgment on the claim for breach of the promissory note because CSB was not a party to or an assignee of the note. Lastly, Bobick contends that the trial court erred in dismissing her counterclaims pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub. L. No. 101–73, 103 Stat. 183 (codified as amended in scattered sections of 12 U.S.C.). For the reasons discussed below, we affirm the trial court's rulings.

Summary judgment is appropriate if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). On appeal from a trial court's grant of summary judgment, we "conduct a de novo review, construing all reasonable inferences in the light most favorable to the nonmoving party." *Bank of North Ga. v. Windermere Dev.*, 316 Ga. App. 33, 34 (728 SE2d 714) (2012).

We also review de novo a trial court's grant of a motion to dismiss. *Ga. Dept. of Community Health v. Data Inquiry*, 313 Ga. App. 683 (722 SE2d 403) (2012). We

construe the pleadings in the light most favorable to the non-moving party with any doubts resolved in that party's favor. Id.

The record reflects that on January 15, 2008, First National made a loan to Bobick in the principal amount of $2,200,250. Bobick signed a promissory note for the principal sum of the loan plus interest with a maturity date of January 15, 2009. The note was secured by property that "include[d], but [was] not limited to," 185,394 shares of stock that Bobick owned in WGNB Corporation, as reflected in a security agreement included with the note.

Bobick failed to fully pay the amount owed on the promissory note by the maturity date. On July 22, 2009, First National filed the present suit against Bobick for breach of the note in the State Court of Carroll County. First National sought to recover unpaid principal, interest, late fees, and attorney fees.

In January 2010, First National failed and was closed by the Office of the Comptroller of the Currency, and the FDIC was appointed as receiver for the failed bank. On January 29, 2010, the FDIC in its capacity as receiver transferred certain categories of assets of First National, including "Loans" owed to or held by the bank, to CSB pursuant to a "Purchase and Assumption Agreement." The FDIC as receiver

later executed an "Assignment of Security Instruments and other Loan Documents" (the "Assignment Agreement") under which it assigned and transferred to CSB all

> rights, title, and interests in and to all those certain Mortgages, Security Deeds, Deeds to Secure Debt, Deeds of Trust, Assignments of Rents and Leases, UCC-1 financing statements, judgment liens, and all such other instruments and security agreements securing loans owned by First National . . . and held of record by First National . . . as of January 29, 2010 . . . and all modifications, extensions, amendments and renewals thereto (collectively, the "Security Instruments")[,] TOGETHER with all of the underlying debts described in such Security Instruments.

The FDIC further assigned and transferred to CSB all

> rights, title and interests in and to the promissory notes, loan documents and all other indebtedness secured by the Security Instruments, as evidenced by related promissory notes, any and all loan agreements, pledges, security agreements and UCC financing statements and all modifications, extensions, amendments and renewals to said documents and instruments together with any and all other loan documents, title policies and casualty insurance policies evidencing, securing or relating to any of the foregoing all of which have been delivered to . . . [CSB].

Based on these agreements that it had entered into with the FDIC, CSB came into possession of the promissory note and security agreement that had been executed by Bobick in favor of First National.

On March 8, 2010, Bobick answered the complaint filed by First National,[1] raised several affirmative defenses, and asserted counterclaims for declaratory judgment, breach of contract, breach of fiduciary duty, fraud, attorney fees, and punitive damages. Bobick also successfully moved to add as a counterclaim defendant H. B. "Rocky" Lipham, III, who had served as a Director of First National and its CEO and President.

Bobick alleged in her counterclaims that First National's failure was a direct and proximate result of mismanagement by Lipham and other bank officials, and that, as a result of the failure of the bank, her stock in WGNB Corporation, which she alleged was the "holding company" of First National, had been rendered worthless. Bobick further alleged that Lipham and other bank officials had represented to her that the promissory note would continue to be renewed in one-year increments until she was able to repay her loan to First National, and that her stock in WGNB Corporation would be sufficient collateral and would be adequate by itself to secure the loan's repayment. Bobick alleged that despite these representations, when the note

---

[1] First National previously had moved for entry of a default judgment against Bobick, but Bobick had opposed the motion on the ground that she had never been properly served with process. The state court denied First National's motion and ordered that Bobick be properly served. Bobick then was served with process on February 5, 2010.

5

matured on January 15, 2009, First National requested additional collateral for the loan and refused to renew the note without additional collateral.

According to CSB, after Bobick filed her answer and counterclaims, First National filed a motion to substitute CSB as the plaintiff on March 25, 2011, but the state court did not rule on the motion.[2] On November 10, 2011, the case was transferred to the Superior Court of Carroll County with the case style of the transfer order still listing First National as the plaintiff.

On May 25, 2012, CSB moved for summary judgment on the claim for breach of the promissory note. CSB argued that it had established its prima facie right to recover and that the burden then had shifted to Bobick to establish any affirmative defenses. CSB further argued that Bobick had failed to come forward with any evidence in support of her affirmative defenses or to raise a question of fact challenging the bank's right to recover unpaid principal, interest, late fees, and attorney fees under the promissory note.

---

[2] Bobick asserts that a motion to substitute was never filed. At the hearing in the superior court on the motions to dismiss and for summary judgment, counsel for CSB stated in his place that a motion to substitute had been filed in state court before the case had been transferred, and he provided a copy of the motion to the superior court for its review. However, the motion to substitute was not entered as an exhibit at the hearing and does not otherwise appear in the appellate record.

On May 30, 2012, CSB filed a motion to dismiss Bobick's counterclaims for lack of subject matter jurisdiction on the ground that Bobick had failed to exhaust her administrative remedies before the FDIC as required by FIRREA. CSB also argued that Bobick's counterclaim seeking a declaratory judgment should be dismissed on the additional ground that it would improperly restrain the exercise of the powers of the FDIC as receiver under FIRREA. Furthermore, CSB argued that Bobick's counterclaim for breach of fiduciary duty should be dismissed on the additional ground that it was a shareholder derivative claim that could only be asserted by the FDIC as receiver for First National under FIRREA.

After Bobick filed her responses opposing the two motions, the superior court heard oral argument. Following the hearing, the trial court entered its Final Judgment and Order granting summary judgment to "Plaintiff Community & Southern Bank" and entered judgment in favor of the bank for the unpaid principal due on the promissory note, interest, late fees, and contractual attorney fees. The superior court dismissed Bobicks' counterclaims in the same order. This appeal followed.

1. Bobick first contends that the superior court erred in granting CSB's motions to dismiss and for summary judgment because CSB was never substituted as the plaintiff and thus was never made a proper party to the case. We disagree.

7

Neither the state court nor the superior court entered a separate order that expressly substituted CSB as the plaintiff in this suit. But in its Final Judgment and Order, the superior court identified the plaintiff in the style of the case as "First National Bank of Georgia *now known as* Community & Southern Bank," referred to the plaintiff as "Plaintiff Community & Southern Bank" throughout the order, and specifically stated that the court was entering judgment in favor of "Plaintiff Community & Southern Bank." (Emphasis supplied.)

Superior court orders "are construed according to their substance and function and not merely by nomenclature," and "[t]he goal is to give full effect to the totality of the [ruling that was] rendered rather than to read words in a vacuum." (Citations and punctuation omitted.) *Hedquist v. Merrill Lynch, Pierce, Fenner & Smith*, 284 Ga. App. 387, 391 (1) (643 SE2d 864) (2007). The wording of the Final Judgment and Order make clear that the superior court intended to substitute CSB as the plaintiff in addition to ruling on the motions to dismiss and for summary judgment that had been filed by CSB. Accordingly, Bobick's contention that CSB was never substituted as the plaintiff in the suit is without merit. Cf. *Rocor Intl. v. Guyton*, 229 Ga. App. 758, 763 (494 SE2d 571) (1997) (Beasley, J., concurring specially) (noting

8

that administrative law judge had "on his own initiative implicitly substituted" one corporation for another, "as can be done pursuant to OCGA § 9-11-21").

2. Bobick next contends that the trial court erred in granting summary judgment to CSB on the claim for breach of the promissory note because CSB was not a party to the note and CSB failed to establish that it had been assigned the note by the FDIC as receiver for First National. Again, we disagree.

> The doctrine of privity of contract requires that only parties to a contract may bring suit to enforce it. A party may assign to another a contractual right to collect payment, including the right to sue to enforce the right[, and the] assignment must be in writing in order for the contractual right to be enforceable by the assignee.

(Citations, punctuation, and emphasis omitted.) *Arrow Financial Svcs. v. Wright*, 311 Ga. App. 319, 321-322 (1) (715 SE2d 725) (2011).

It is undisputed that First National failed and that the FDIC was appointed as receiver for the bank. In connection with its motion for summary judgment, CSB submitted documents reflecting a complete chain of assignment for the promissory note at issue, including the note and security agreement executed by Bobick in favor of First National; the Purchase and Assumption Agreement entered between the FDIC and CSB, which listed the FDIC as receiver for First National and assigned the

9

"Loans" of First National to CSB; and the Assignment Agreement in which the FDIC as receiver for First National assigned the promissory notes and security instruments of First National to CSB.

Furthermore, CSB submitted the affidavit of George Platt, who had been granted a limited power of attorney by the FDIC, as receiver for First National, authorizing him to execute assignment documents that evidenced the sale and transfer of assets of First National, including its loan portfolio, to CSB pursuant to the Purchase and Assumption Agreement. Platt executed the Assignment Agreement on behalf of the FDIC as receiver for First National, and he averred that the promissory note executed by Bobick on January 15, 2008 was among the loan documents of First National that had been assigned and transferred to CSB pursuant to the Purchase and Assumption Agreement and the Assignment Agreement.

Finally, CSB submitted the affidavit of Patrick Dowling, Vice President and Special Assets Professional for CSB and the custodian of its business records. He averred that CSB had acquired from the FDIC the promissory note entered into by Bobick on January 15, 2008 and that the note was currently in the possession of CSB.

This combined evidence was sufficient to establish a valid assignment of Bobick's promissory note to CSB. See *Heritage Constr. Corp. v. State Bank & Trust*

*Co.*, 316 Ga. App. 25, 705-706 (728 SE2d 703) (2012); *Kensington Partners v. Beal Bank Nevada*, 311 Ga. App. 196, 196-197 (1) (715 SE2d 491) (2011). The superior court therefore did not err in granting summary judgment to CSB on the claim for breach of the note.[3]

3. Bobick further contends that the trial court erred in dismissing her counterclaims against First National. Bobick maintains that she was not required to exhaust administrative remedies under FIRREA before bringing her counterclaims, and that, as a result, the superior court had subject matter jurisdiction to hear those claims and should not have dismissed them.[4] We do not agree.

---

[3] Apart from the assignment issue, Bobick does not challenge on appeal the other rulings necessarily made by the superior court in granting summary judgment to CSB on the claim for breach of the promissory note, including that Bobick had failed to come forward with any evidence in support of her affirmative defenses or to raise a question of fact regarding the amount she owed in unpaid principal, interest, late fees, and attorney fees under the note.

[4] A motion to dismiss for lack of subject matter jurisdiction under OCGA § 9-11-12 (b) (1) "can allege either a facial challenge, in which the court accepts as true the allegations on the face of the complaint [or counterclaim], or a factual challenge, which requires consideration of evidence beyond the face of the complaint [or counterclaim]." (Citation and punctuation omitted.) *Pinnacle Benning v. Clark Realty Capital*, 314 Ga. App. 609, 618 (2) (a), n. 37 (724 SE2d 894) (2012). CSB's motion to dismiss was based on the allegations contained on the face of Bobick's counterclaims.

11

Under the doctrine of administrative exhaustion, a party must pursue available statutory administrative remedies before seeking judicial review. See *Ga. Dept. of Community Health v. Ga. Society of Ambulatory Surgery Centers*, 290 Ga. 628, 629 (724 SE2d 386) (2012). If a party fails to pursue those remedies, a trial court is deprived of subject matter jurisdiction over the action. See *We, the Taxpayers v. Bd. of Tax Assessors of Effingham County*, 292 Ga. 31, 35 (2) (734 SE2d 373) (2012). "[T]he rationale for requiring exhaustion of administrative remedies is to permit the agency to apply its expertise, preserve the agency's autonomy, allow for a more efficient resolution, and provide for the uniform application of matters within the agency's jurisdiction." *Northeast Ga. Cancer Care v. Blue Cross & Blue Shield of Ga.*, 297 Ga. App. 28, 32 (1) (676 SE2d 428) (2009). Mindful of these principles, we turn to FIRREA and the question of its application in this case.

FIRREA "was enacted to strengthen regulation of the nation's financial system in the wake of the savings and loan crisis of the 1980s," and "[i]t grants the FDIC broad powers under 12 U. S. C. § 1821 to manage the affairs of insolvent banks as receiver or conservator." *Iberiabank v. Beneva 41-I, LLC*, 701 F.3d 916, 921 (11th

Cir. 2012).[5] FIRREA also created an administrative process for addressing claims against failed banks for which the FDIC has been appointed as receiver. See 12 U.S.C. § 1821 (d) (3) - (13); *Stamm v. Paul*, 121 F.3d 635, 639 (11th Cir. 1997); *Lazarre v. JPMorgan Chase Bank, N. A.*, 780 F. Supp.2d 1320, 1324 (S.D. Fla. 2011). Pursuant to that process, the FDIC in its capacity as receiver for a failed bank is authorized to determine claims against the bank under procedures established by statute and FDIC regulations. See 12 U. S. C. § 1821 (d) (3) (A), (d) (4); *Lazarre*, 780 F. Supp.2d at 1324.

"In enacting FIRREA, Congress anticipated that, as a receiver for failed lending entities, the [FDIC] would face numerous claims from various parties." *Stamm*, 121 F.3d at 639. Consequently, Congress established limits on judicial review of such claims. See id. In this regard, 12 U. S. C. § 1821 (d) (13) (D) provides:

Except as otherwise provided in this subsection, no court shall have jurisdiction over--

---

[5] The decisions of the United States Court of Appeals for the Eleventh Circuit are not binding on this Court, even on questions of federal law, but they are persuasive authority. See *Deen v. Stevens*, 287 Ga. 597, 601 (2) (b) (698 SE2d 321) (2010).

13

(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver, including assets which the [FDIC] may acquire from itself as such receiver; or

(ii) any claim relating to any act or omission of such institution or the [FDIC] as receiver.

We agree with the Eleventh Circuit's construction of 12 U. S. C. § 1821 (d) (13) (D) as broadly covering all

(1) claims for payment from assets of any depository institution for which the [FDIC] has been appointed Receiver;

(2) actions for payment from assets of such depository institutions;

(3) actions seeking a determination of rights with respect to the assets of such depository institutions; and

(4) . . . claim[s] relating to any act or omission of such institution or the [FDIC] as receiver.

*American First Fed. v. Lake Forest Park, Inc.*, 198 F.3d 1259, 1263 (11th Cir. 1999), quoting *National Union Fire Ins. v. City Savings*, 28 F.3d 376, 393 (3d Cir.1994).

14

Furthermore, the Eleventh Circuit has construed the limitation on judicial review imposed by 12 U. S. C. § 1821 (d) (13) (D) as establishing an administrative exhaustion requirement, and we find its reasoning persuasive. See *Interface Kanner, LLC v. JPMorgan Chase Bank, N. A.*, 704 F.3d 927, 934 (11th Cir. 2013) ("While FIRREA does not provide an explicit mandate for exhaustion of administrative remedies, its provisions are accepted by the cases and by Congress as having that meaning.") (citation and punctuation omitted); *American First Fed.*, 198 F.3d at 1263-1264 (noting that "[t]here is a consensus among the circuits that all claims that fall within these categories are subject to [an] exhaustion requirement").[6] Furthermore, the Eleventh Circuit has held, and we agree, that all claims falling within 12 U. S. C. § 1821 (d) (13) (D) are subject to the exhaustion requirement regardless of "whether they are asserted as initial claims or as counterclaims." *American First Fed.*, 198 F.3d at 1263. Thus, we conclude that if a claim or counterclaim falls within 12 U. S. C. § 1821 (d) (13) (D), courts are divested of

---

[6] Judicial review in federal court is available after the FDIC makes a determination regarding a party's claim as part of its administrative claims process. See 12 U.S.C. § 1821 (d) (6) (authorizing filing suit in certain federal courts after the FDIC's initial determination to allow or disallow a claim); 12 U. S. C. § 1821 (d) (7) (A) (authorizing judicial review of the FDIC's final administrative determination).

subject matter jurisdiction if the claimant failed to exhaust her administrative remedies before the FDIC. See *American First Fed.*, 198 F.3d at 1263.

Bobick's counterclaims against First National concern purported actions taken by that bank before it was closed and placed in receivership in January 2010, and, therefore, are "claim[s] relating to [an] act or omission of [an] institution" for which the FDIC was appointed as receiver. *American First Fed.*, 198 F.3d at 1263. See 12 U. S. C. § 1821 (d) (13) (D) (ii). Moreover, Bobick's counterclaims seeking damages for the purported conduct of First National in January 2010 are "claims for payment from assets of [a] depository institution for which the [FDIC] has been appointed [r]eceiver." *American First Fed.*, 198 F.3d at 1263. See 12 U. S. C. § 1821 (d) (13) (D) (i). Additionally, Bobick's counterclaim for a declaratory judgment – which sought a declaration that a "new contract" was in place between First National and Bobick and that the existing promissory note was null and void as the result of a novation – was an "action[] seeking a determination of rights with respect to the assets of [a] depository institution[]" for which the FDIC was appointed as receiver. *American First Fed.*, 198 F.3d at 1263. See 12 U. S. C. § 1821 (d) (13) (D) (i); *Interface Kanner, LLC*, 704 F.3d at 934 (plain language of 12 U. S. C. § 1821 (d) (13) (D) (i) includes declaratory judgment actions). It follows that Bobick's counterclaims

16

brought against First National come within the ambit of 12 U. S. C. § 1821 (d) (13) (D) and are subject to the administrative exhaustion requirement imposed by FIRREA. See *American First Fed.*, 198 F.3d at 1263.

Bobick does not allege that she submitted an administrative claim to the FDIC. Rather, Bobick asserts that none of her counterclaims brought against First National fall within the scope of the administrative exhaustion requirement because the FDIC is not a party to this litigation; her counterclaims are "pre-receivership claims" and the FDIC never requested to stay the court proceedings; the FDIC never provided her with proper notice of the administrative claims process relating to First National; and there was no receivership in place at the time that First National filed its suit on the promissory note, the sole point in time at which Bobick alleges that subject matter jurisdiction should have been assessed. Bobick also maintains that her request for a declaratory judgment did not fall within the exhaustion requirement because it was in essence an affirmative defense rather than a counterclaim. We will address these arguments each in turn.

(a) Bobick first asserts that none of her counterclaims fall within the administrative exhaustion requirement because the FDIC is not a party to this litigation. We are unpersuaded.

17

12 U. S. C. § 1821 (d) (13) (D) does not limit its jurisdictional bar to claims or counterclaims brought against the FDIC or the failed bank for which it was appointed as receiver. Rather, by its plain language, 12 U. S. C. § 1821 (d) (13) (D) refers to "*any*" claim or action and "does not make its application contingent upon whom the claim is against." (Emphasis in original.) *Aber-Shukofsky v. JPMorgan Chase & Co.*, 755 F. Supp.2d 441, 447 (E.D. N.Y. 2010). Hence, "an entity [such as CSB] that purchases a failed lending institutions assets from the FDIC acquires the administrative review protections afforded by section 1821 (d)" and is entitled to seek dismissal of a claim for failure to exhaust administrative remedies. *Lazarre*, 780 F. Supp.2d at 1325. See *American First Fed.*, 198 F.3d at 1263, n.3; *Haygood v. Community & Southern Bank*, No. 1:12-cv-295-WSD, 2012 U.S. Dist. LEXIS 180826, at *16 (N.D. Ga. Dec. 21, 2012). See also *Aber-Shukofsky*, 755 F. Supp.2d at 446-450 (discussing federal cases holding that FIRREA applies to claims brought against a third party that purchased a failed bank's assets from the FDIC acting as receiver). The administrative exhaustion requirement imposed by 12 U. S. C. § 1821 (d) (13) (D) therefore applies in this case even though the FDIC was not named as a defendant to Bobick's counterclaims.

(b) Bobick next asserts that none of her counterclaims fall within the administrative exhaustion requirement because her counterclaims were "pre-receivership claims" and the FDIC never intervened in the suit to request a stay of the court proceedings. Again, we are unpersuaded.

The Eleventh Circuit has construed FIRREA to provide two separate schemes for the disposition of pre-receivership and post-receivership claims. See *Fed. Deposit Ins. Corp. v. Lacentra Trucking*, 157 F.3d 1292, 1301 (11th Cir. 1998); *Damiano v. Fed. Deposit Ins. Corp.*, 104 F.3d 328, 333-334 (11th Cir. 1997). For claims already pending in court when a bank is placed into receivership, a court retains subject matter jurisdiction to hear the claims but should stay the action if the FDIC timely requests a stay and "inform[s] the [claimant] that it is doing so pending exhaustion of . . . administrative remedies." *Damiano*, 104 F.3d at 335. See 12 U. S. C. § 1821 (d) (5) (F) (ii), (d) (8) (E), and (d) (12). But "[f]or post-receivership claims, the court has no subject matter jurisdiction unless the claimant has exhausted [her] administrative remedies." *Damiano*, 104 F.3d at 333. See 12 U. S. C. § 1821 (d) (13) (D).

Federal courts are split over whether FIRREA draws a distinction between pre-receivership and post-receivership claims for purposes of administrative exhaustion.

19

See *Cassese v. Washington Mutual*, 711 F. Supp.2d 261, 268 (E.D. NY 2010) (discussing cases). Unlike the Eleventh Circuit, some federal courts hold that a court is divested of subject matter jurisdiction over a claim falling within FIRREA irrespective of whether the claim was filed pre-receivership or post-receivership. See id. at 268; *Intercontinental Travel Marketing v. Fed. Deposit Ins. Corp.*, 45 F.3d 1278, 1282-1283 (9th Cir.1994); *Bueford v. Resolution Trust Corp.*, 991 F.2d 481, 485 (8th Cir. 1993); *Resolution Trust Corp. v. Mustang Partners*, 946 F.2d 103, 106 (10th Cir.1991) (per curiam).

We need not decide which position we find more persuasive because all of Bobick's counterclaims against First National were post-receivership claims and thus fell within the administrative exhaustion requirement under both lines of federal cases. Post-receivership claims include, but are not limited to, "claims related to conduct by the failed financial institution that the aggrieved party neglects to assert until after the [FDIC] assumes control over the lending entity." *Stamm*, 121 F.3d at 639. Bobick's counterclaims, all of which related to the purported conduct of First National before its failure, were not filed until after the FDIC assumed control of the failed bank and thus constituted post-receivership claims. See *Resolution Trust Corp. v. W. W. Dev. & Mgmt.*, 73 F.3d 1298, 1309-1310 (3d Cir. 1996); *Fed. Deposit Ins.*

20

*Corp. v. Bristol Home Mtg. Lending*, No. 08-81535-CIV-MARRA/JOHNSON, 2009 U. S. Dist. LEXIS 37803, at *4-5 (S.D. Fla. May 4, 2009). Consequently, Bobick was required to exhaust her administrative remedies before the FDIC prior to asserting her counterclaims against First National in the present suit. See *Damiano*, 104 F.3d at 333; *Bristol Home Mtg. Lending*, 2009 U. S. Dist. LEXIS 37803, at *4-5.

(c) Bobick further asserts that none of her counterclaims fall within the administrative exhaustion requirement because the FDIC never provided her with proper notice of the administrative claims process relating to First National. We disagree.

> [T]he FDIC's failure to provide proper notice does not relieve the claimant of the obligation to exhaust administrative remedies, because [FIRREA] does not provide for a waiver or exception under those circumstances. The only exception to the strict requirement of exhaustion of remedies, is where the claimant does not receive notice of the appointment of the receiver in time to file his claim.

(Citations and punctuation omitted.) *RTC Mtg. Trust 1994-N2 v. Haith*, 133 F.3d 574, 579 (8th Cir. 1998). See 12 U.S.C. § 1821 (d) (5) (C) (ii); *Lubin v. Fed. Deposit Ins. Corp.*, No. 1:10-CV-00874-RWS, 2011 U.S. Dist. LEXIS 21391, at *10-11 (N.D. Ga. March 2, 2011).

21

Bobick does not contend that she lacked notice of the FDIC's appointment as receiver for First National within the time frame for filing an administrative claim, and admitted during her deposition that she was aware "[w]hen that bank was eventually closed by the FDIC" because "[t]his is a small town." Accordingly, Bobick's assertion that she was not required to exhaust her administrative remedies because of lack of proper notice from the FDIC is without merit. See *Haith*, 133 F.3d at 579; *Lubin*, 2011 U.S. Dist. LEXIS 21391, at \*10-11.

(d) Bobick asserts that none of her counterclaims fall within the administrative exhaustion requirement because there was no receivership in place at the time that First National filed its lawsuit, the sole point in time when she alleges that subject matter jurisdiction should be evaluated. We do not agree.

It is true that subject matter jurisdiction is assessed at the time of the filing of a suit and is not lost by the occurrence of subsequent developments. See *Ga. Dept. of Community Health*, 290 Ga. at 630 (1); *Champion v. Rakes*, 155 Ga. App. 134, 134-135 (270 SE2d 272) (1980). But the subject matter jurisdiction of state courts can be preempted by federal law under the Supremacy Clause of the United States Constitution. See U.S. Const., Art. 6, cl. 2. See also *Norton v. North Ga. Foods*, 211 Ga. App. 684, 685-687 (440 SE2d 263) (1994) (state court action properly dismissed

22

for lack of subject matter jurisdiction because of preemption under federal Employee Retirement Income Security Act).

As explained supra in Division 3 (b), FIRREA provides that counterclaims filed post-receivership are subject to the administrative exhaustion requirement imposed by 12 U. S. C. § 1821 (d) (13) (D) and must be dismissed for lack of jurisdiction if the claimant failed to first exhaust the administrative claims process before the FDIC. Hence, because Bobick asserted her counterclaims after the appointment of the FDIC as receiver and failed to exhaust her administrative remedies pertaining to those claims, the jurisdiction of the superior court must yield to federal law, and Bobick's counterclaims were properly dismissed. See *Thomas v. Fed. Deposit Ins. Corp.*, 255 P.3d 1073, 1081-1082 (Colo. 2011) (subject matter jurisdiction of state courts limited and preempted by FIRREA).

(e) Lastly, Bobick argues that even if her other counterclaims against First National were subject to dismissal pursuant to the administrative exhaustion requirement imposed by 12 U. S. C. § 1821 (d) (13) (D), her request for a declaratory judgment did not fall within that requirement because it essentially was a affirmative defense rather than a counterclaim. We disagree.

23

Unlike counterclaims, affirmative defenses generally do not fall within the administrative exhaustion requirement. See *American First Fed.*, 198 F.3d at 1264. An affirmative defense is "a response to a plaintiff's claim which attacks the plaintiff's *legal* right to bring an action." (Emphasis in original.) Id., quoting Black's Law Dictionary (6th ed. 1991). A counterclaim, in contrast, seeks some type of affirmative relief against the plaintiff. *T.V. Tempo v. T.V. Venture*, 182 Ga. App. 198, 200-201 (1) (355 SE2d 76) (1987).

> [A] court must look beyond the nomenclature of a request for relief to ascertain whether it is a true affirmative defense or is, in actuality, a claim requiring exhaustion as a prerequisite to jurisdiction. Whether a request for relief is titled an affirmative defense or a counterclaim is not dispositive to the question of subject matter jurisdiction. The germane question is whether the remedy sought by a party, regardless of its label, is encompassed by Section 1821(d)(13)(D)[.]

*American First Fed.*, 198 F.3d at 1264-1265.

Bobick labeled her request for a declaratory judgment against First National as a counterclaim. In seeking declaratory relief, Bobick alleged that First National had represented to her that the promissory note would continue to be renewed until she was able to repay her loan to First National, and that her stock in WGNB Corporation would be sufficient collateral for her loan and its renewal. Bobick asked the superior

24

court to declare pursuant to the Declaratory Judgments Act, OCGA § 9-4-1 et seq., that First National's alleged representations regarding the renewal of the note and the sufficiency of the collateral created a "new contract" that "constitute[d] a novation of the prior agreement between the parties" and was binding on First National.

Bobick's request for a declaratory judgment is properly characterized as a counterclaim rather than an affirmative defense. Bobick did not merely seek to prevent First National from recovering on the promissory note; rather, she sought affirmative relief declaring that a "new contract" had been formed that would remain binding on the parties until the loan from First National was repaid. As such, the claim sought "a determination of rights with respect to the assets of [a] depository institution[]" for which the FDIC had been appointed as receiver and therefore fell within the contours of the administrative exhaustion requirement imposed by 12 U. S. C. § 1821 (d) (13) (D) (i). See *American First Fed.*, 198 F.3d at 1263. See also *Interface Kanner, LLC*, 704 F.3d at 934 (counterclaim for declaratory judgment was subject to administrative exhaustion requirement).[7]

---

[7] We also note that under 12 U. S. C. § 1821 (j), "no court may take any action . . . to restrain or affect the exercise of powers or functions of the [FDIC] as a conservator or a receiver." "This provision has been interpreted broadly to bar judicial intervention whenever the FDIC is acting in its capacity as a receiver or conservator[.]" *Bank of America Nat. Assoc. v. Colonial Bank*, 604 F.3d 1239, 1243

4. Bobick separately contends that the superior court erred in dismissing her counterclaim for breach of fiduciary duty against First National due to lack of standing. Bobick argues that she was not required to bring her counterclaim as a shareholder derivative claim, and, therefore, that the claim could be asserted by her rather than by the FDIC as receiver.

Under FIRREA, when the FDIC is appointed as the receiver of a failed bank, it succeeds to "all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder . . . of such institution with respect to the institution and the assets of the institution." OCGA § 1821 (d) (2) (A) (i). We, like several federal courts, construe this provision as granting the FDIC "ownership over all shareholder derivative claims" brought by a shareholder on behalf of the failed bank against its officers and directors. *Lubin v. Skow*, 382 Fed. Appx. 866, 870 (11th Cir. 2010) (per curiam) (unpublished opinion). See *Pareto v. Fed. Deposit Ins. Corp.*, 139 F.3d 696, 700 (9th Cir. 1998) ("Plainly, the section vests all rights and powers

(11th Cir. 2010). Bobick asked the superior court to declare that a new contract existed between the parties and that the promissory note was null and void due to the alleged novation. If granted, the declaratory relief sought by Bobick would serve as a restraint and affect the exercise of the powers of the FDIC, given that Bobick questions the very legal existence of the instrument that the FDIC assigned and transferred to CSB.

26

of a stockholder of the bank to bring a derivative action in the FDIC."); *Fed. Deposit Ins. Corp. v. American Casualty Co. of Reading, Pa.*, 998 F.2d 404, 406 (7th Cir. 1993) ("By virtue of its status as receiver, the FDIC succeed to the rights of the [b]ank and its shareholders, one of which is the ability to sue the [b]ank's directors and officers."). Hence, the pertinent legal question is whether Bobick's counterclaim for breach of fiduciary duty against First National could only be brought as a shareholder derivative claim.[8] If the answer is in the affirmative, then her counterclaim was properly dismissed because only the FDIC as receiver had standing to bring it. See *Lubin*, 382 Fed. Appx. at 870-872.

(a) "Where a shareholder alleges devaluation of shares due to corporate mismanagement," the action must be brought as a shareholder derivation action. *Lubin*, 382 Fed. Appx. at 870-872. See *Greenwood v. Greenblatt*, 173 Ga. 551, 556 (161 SE 135) (1931). Bobick's counterclaim for breach of fiduciary duty alleged that Lipham and other bank officers had mismanaged First National, which caused the

---

[8] In a shareholder derivative action,
as a practical matter, the corporation is initially named as a defendant. In this way the stockholder insures the presence of the corporation as an indispensable party. Once joined and present before the court, the corporation is then realigned, if necessary, according to its real interests.

*Kilburn v. Young*, 244 Ga. App. 743, 745 (1) (536 SE2d 769) (2000), quoting *Liddy v. Urbanek*, 707 F.2d 1222, 1224 (11th Cir.1983).

27

stock of First National's holding company, WGNB Corporation, to become worthless. The Eleventh Circuit in an unpublished opinion has held, and we agree with its reasoning, that when a claim alleges that a failed bank's officers breached their fiduciary duty by mismanaging the bank, resulting in the devaluation of the shares of the bank's holding company, the harm caused to the holding company "is inseparable from the harm done to the [b]ank," and the claim is a derivative one that belongs to the FDIC as receiver for the bank. See *Lubin*, 382 Fed. Appx. at 870-872. It follows that Bobick's counterclaim for breach of fiduciary duty against First National predicated on the alleged mismanagement of the bank was properly dismissed for lack of standing. See id.

(b) Bobick's counterclaim also alleged that First National breached the fiduciary duty that it owed to Bobick as her lender and owed her damages for "failing to honor the agreement [that it had with her] to renew the loan." This allegation clearly was not a shareholder derivative claim, and thus did not belong to the FDIC as receiver.[9] Nevertheless, the allegation was a "claim[] for payment from assets of

---

[9] We express no opinion regarding whether or to what extent First National actually owed a fiduciary duty to Bobick as her lender under the circumstances of this case; rather, our discussion is limited to whether such a claim constituted a shareholder derivative claim and whether it was subject to the administrative exhaustion requirement imposed by FIRREA.

[a] depository institution for which the [FDIC] ha[d] been appointed [r]eceiver," and further constituted "a claim relating to any act or omission of such [an] institution." *American First Fed.*, 198 F.3d at 1263. As such, the counterclaim for breach of fiduciary duty, to the extent that it alleged a breach of fiduciary duty based on the lending relationship between First National and Bobick, was subject to the administrative exhaustion requirement imposed by 12 U. S. C. § 1821 (d) (13) (D) and was properly dismissed for Bobick's failure to abide by that requirement. See supra Division 3. The superior court's dismissal of the breach of fiduciary duty claim against First National based on its lending relationship with Bobick, therefore, is affirmed on this alternative ground. See *C. C. Leasing Corp. v. Bd. of Tax Assessors of Hall County*, 143 Ga. App. 520, 521 (239 SE2d 204) (1977) (trial court's grant of a motion to dismiss will be affirmed if right for any reason).

5. Bobick also asserted several counterclaims against Lipham that the superior court dismissed in its Final Order and Judgment. She enumerates as error the superior court's dismissal of these counterclaims, but Bobick made no effort in her appellate brief to differentiate between Lipham and CSB for purposes of her argument on appeal. Hence, any legal arguments that Bobick could have made separately on Lipham's behalf differentiating the counterclaims brought against him from those

brought against the bank are hereby deemed abandoned. See Court of Appeals Rule 25 (c) (2); *Rolleston v. Estate of Sims*, 253 Ga. App. 182, 188 (8) (558 SE2d 411) (2001) (error deemed abandoned if not properly supported by citation to legal authorities or to the record). Consequently, the superior court's dismissal of the counterclaims asserted against Lipham are affirmed for the same reasons set forth in Divisions 3 and 4.

*Judgment affirmed. Miller and Ray, JJ., concur.*