**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER, and RAY, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 18, 2014**

# In the Court of Appeals of Georgia

A13A2086. OLDE TOWNE TYRONE, LLC et al. v. MULTIBANK
       2009-1 CRE VENTURE, LLC.

BARNES, Presiding Judge.

This appeal arises out of a dispute over a commercial promissory note executed by Appellant Olde Towne Tyrone, LLC ("Olde Towne") in favor of Integrity Bank and personally guaranteed by Appellant Jeffery V. Curtis.[1] Following execution of the note and guaranty, Integrity failed, and the Federal Deposit Insurance Corporation ("FDIC") was appointed as receiver. The FDIC then assigned and transferred the loan documents to Appellee Multibank 2009-1 CRE Venture, LLC ("Multibank").

---

[1] During the pendency of this appeal, George C. Rosenzweig, Jeffery Curtis's legal representative, filed a suggestion of Curtis's death and moved to voluntarily substitute himself as a party to this appeal under Court of Appeals Rule 43 (b). Rosenzweig's motion is hereby granted, and he is substituted as a party to this appeal. However, for ease of reference, we will continue to refer to Curtis as an appellant throughout this opinion.

Contending that Olde Towne had defaulted on its loan obligations, Multibank filed the present action against the Appellants for breach of the note and guaranty. The trial court subsequently granted summary judgment in favor of Multibank, concluding that Appellants' affirmative defenses and proposed counterclaims were subject to dismissal under the administrative exhaustion provision of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub. L. No. 101–73, 103 Stat. 183 (codified as amended in scattered sections of 12 U.S.C.). For the reasons discussed below, we affirm.

Summary judgment is proper where the pleadings and evidence demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). We review a trial court's grant of summary judgment de novo and construe all inferences in the light most favorable to the nonmoving party. *Home Builders Assn. of Savannah v. Chatham County*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003).

The record reflects that on January 5, 2007, Appellant Olde Towne entered into a commercial loan agreement with Integrity Bank to fund the purchase and development of approximately 54.6 acres of land in Fayette County, Georgia. Under the terms of the agreement, Integrity agreed to loan Olde Towne a total of $6,140,000,

with $5,969,085 to be disbursed at the closing of the loan and the remaining $1,645,915 to be advanced in the future to fund the development.

Olde Towne executed a commercial promissory note for the loan. The note was set to mature on January 5, 2009, when the outstanding principal balance would become due. Before the maturity date, Olde Towne was required to make monthly interest payments on the note. The note was secured by a security deed on the property, and Appellant Curtis, a member and investor in Olde Towne, executed a guaranty for the indebtedness.

Olde Towne ceased making interest payments on the note beginning in January 2008. To date, Olde Towne has not paid the amounts owed on the note that have accrued since January 2008, including interest, late charges, and the outstanding principal balance. Nor has Curtis, the guarantor, paid the outstanding amounts owed on the note.

On August 29, 2008, Integrity was closed by the Georgia Department of Banking and Finance, and the FDIC was appointed as receiver. In January 2010, the FDIC, in its capacity as receiver, assigned and transferred a portfolio of loans of failed banks, including Integrity, to Multibank pursuant to a "Loan Contribution and

Sale Agreement" (the "Loan Agreement"). The Olde Towne loan was among the loans of Integrity that were assigned and transferred to Multibank.

On May 11, 2011, Multibank filed the instant action against Appellants, contending that Olde Towne had breached the promissory note and that Curtis had breached the guaranty. Multibank sought damages representing the current outstanding balance due on the note of $7,290,550.64, which included unpaid principal, accrued- interest, and late charges. Multibank also sought attorney fees under OCGA §§ 13-1-11 and 13-6-11.

Appellants thereafter filed their original answer, denying that they were obligated to pay the outstanding balance due on the note. After retaining new counsel, Appellants filed an amended answer that added multiple defenses, including anticipatory repudiation of contract, breach of a condition precedent, and breach of the duty of good faith and fair dealing, all of which were predicated on alleged wrongdoing by Integrity rather than Multibank. According to Appellants, in early 2008, Integrity had ceased providing the advances of loan proceeds to Olde Towne as required by the commercial loan agreement. Appellants alleged that as a result of Integrity's failure to make the advances, Olde Towne was entitled to suspend its performance under the note, including further note payments, beginning in January

4

2008. In addition to filing the amended answer with added defenses, Appellants filed a motion to add counterclaims and to withdraw admissions that had not been answered by previous counsel.

Multibank moved for summary judgment on its claims for breach of the promissory note and guaranty. Multibank also opposed Appellants' motion to add counterclaims and to withdraw admissions. Multibank argued that it had established its prima facie right to recover under the note and guaranty and that all of the Appellants' affirmative defenses and proposed counterclaims failed as a matter of law for several reasons. Among other things, Multibank argued that all of Appellants' affirmative defenses and proposed counterclaims arose from the activities of Integrity and thus should have been asserted in the administrative claims process established under FIRREA after Integrity was closed and the FDIC was appointed as receiver. Consequently, Multibank argued that Appellants' affirmative defenses and proposed counterclaims were barred under the administrative exhaustion provision of FIRREA, 12 USC § 1821 (d) (13) (D).

Appellants responded that the administrative exhaustion provision did not apply to bar their affirmative defenses and proposed counterclaims because the FDIC never provided them with proper notice of the administrative claims process relating

5

to Integrity. Appellants further responded that Multibank was prohibited from invoking the administrative exhaustion provision under the terms of the Loan Agreement between the FDIC and Multibank. As such, Appellants asserted that they were entitled to assert their affirmative defenses and proposed counterclaims in the instant litigation and that genuine issues of material fact existed as to whether Multibank was entitled to judgment on the note and guaranty.

The trial court thereafter entered its order denying Appellants' motion to add counterclaims and withdraw admissions and granting Multibank's motion for summary judgment. The trial court ruled that Multibank had established a prima facie right to recover under the note and guaranty, and that all of Appellants' affirmative defenses and proposed counterclaims arose out of actions by Integrity and were barred by FIRREA's administrative exhaustion provision. The trial court further ruled that even if the administrative exhaustion provision did not apply, all of Appellants' affirmative defenses failed as a matter of law "for either want of any evidence or argument presented in support thereof." Appellants now appeal the trial court's ruling.[2]

---

[2] Charles Scott Seymour, another member and investor in Olde Towne, also executed a personal guaranty for Olde Towne's indebtedness. Seymour was named as a defendant in Multibank's complaint, and the trial court granted summary

1. Appellants contend that the trial court erred in concluding that their affirmative defenses and proposed counterclaims were barred by the administrative exhaustion provision of FIRREA, 12 USC § 1821 (d) (13) (D). We disagree.

We recently discussed FIRREA's administrative exhaustion provision in *Bobick v. Community & Southern Bank*, 321 Ga. App. 855 (743 SE2d 518) (2013) (cert. denied, Oct. 7, 2013). As we explained in *Bobick*, Congress, in enacting FIRREA, established an administrative review process for claims against failed banks for which the FDIC had been appointed as receiver. Id. at 861 (3). Furthermore, Congress "anticipated that, as a receiver for failed lending entities, the FDIC would face numerous claims from various parties," and, as a result, "established limits on judicial review of such claims." (Citations and punctuation omitted.) Id. Specifically, Congress enacted 12 USC § 1821 (d) (13) (D), which provides:

judgment in favor of Multibank on its claims against him. Although Seymour originally was named as an Appellant, we dismissed him as a party to this appeal because the record shows that he has filed a petition for bankruptcy, and, as a result, all proceedings involving him have been stayed pursuant to 11 U.S.C. § 362 of the Bankruptcy Code. As our dismissal order makes clear, Seymour may re-file his appeal within 30 days following the date that the bankruptcy court terminates the automatic stay, grants appropriate relief from the automatic stay, or otherwise determines that the provisions of the automatic stay do not apply to the issues involved in this appeal.

Except as otherwise provided in this subsection, no court shall have jurisdiction over –

(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver, including assets which the [FDIC] may acquire from itself as such receiver; or

(ii) any claim relating to any act or omission of such institution or the [FDIC] as receiver.

We concluded in *Bobick* that the limitation on judicial review imposed by 12 USC § 1821 (d) (13) (D) should be construed as an administrative exhaustion requirement such that if a claim falls within its provisions, "courts are divested of subject matter jurisdiction if the claimant failed to exhaust her administrative remedies before the FDIC." *Bobick*, 321 Ga. App. at 863 (3). We further concluded that "an entity such as [Multibank] that purchases a failed lending institution's assets from the FDIC acquires the administrative review protections afforded by section 1821 (d) and is entitled to seek dismissal of a claim for failure to exhaust administrative remedies." (Citation and punctuation omitted.) Id. at 864 (3) (a).

Against this backdrop, we turn to whether FIRREA's administrative exhaustion provision should be applied in the present case. In the trial court, Appellants raised

two arguments for why the provision should not apply: (a) the FDIC never provided them with proper notice of the administrative claims process relating to Integrity; and (b) Multibank was prohibited from invoking the administrative exhaustion provision under the terms of the Loan Agreement.[3] We will address these two arguments in turn.

(a) Appellants contend that they should be exempted from the administrative exhaustion requirement because they did not receive proper notice of the administrative claims process under 12 USC § 1821 (d) (3) (C). We disagree because the uncontroverted evidence shows that Appellants were on notice of the appointment of the FDIC as receiver in time to file claims in the administrative claims process relating to Integrity.

_____

[3] For the first time on appeal, Appellants argue that their affirmative defenses should not be construed as "claim[s] . . . for payment from" Integrity or "claim[s] relating to any act or omission" of Integrity or the FDIC as receiver, and, therefore, should not be subject to the administrative exhaustion provision. See *Bobick*, 321 Ga. App. at 867 (3) (e). We will not consider legal arguments that were neither raised below nor ruled upon by the trial court. See *Pfeiffer v. Ga. Dept. of Transp.*, 275 Ga. 827, 828-829 (2) (573 SE2d 389) (2002); *Nash v. Studdard*, 294 Ga. App. 845, 849 (2) (670 SE2d 508) (2008).

FIRREA requires the FDIC as receiver to provide notice of the administrative claims process to creditors of the failed bank in accordance with 12 USC § 1821 (d) (3) (B) and (C). Those provisions state:

(B) Notice requirements.

The receiver, in any case involving the liquidation or winding up of the affairs of a closed depository institution, shall –

(i) promptly publish a notice to the depository institution's creditors to present their claims, together with proof, to the receiver by a date specified in the notice which shall be not less than 90 days after the publication of such notice; and

(ii) republish such notice approximately 1 month and 2 months,

respectively, after the publication under clause (i).

(C) Mailing required.

The receiver shall mail a notice similar to the notice published under subparagraph (B) (i) at the time of such publication to any creditor shown on the institution's books –

(i) at the creditor's last address appearing in such books; or

(ii) upon discovery of the name and address of a claimant not appearing on the institution's books within 30 days after the discovery of such name and address. 12 USC § 1821 (d) (3) (B), (C).

Notably, however, as we explained in *Bobick*,

[t]he FDIC's failure to provide proper notice does not relieve the claimant of the obligation to exhaust administrative remedies, because FIRREA does not provide for a waiver or exception under those circumstances. *The only exception to the strict requirement of exhaustion of remedies, is where the claimant does not receive notice of the appointment of the receiver in time to file his claim.*

(Citations and punctuation omitted; emphasis supplied.) *Bobick*, 321 Ga. App. at 865 (3) (c). See 12 USC § 1821 (d) (5) (C) (ii).

We conclude that Appellants received notice of the appointment of the FDIC as receiver in time to file a claim in the administrative claims process relating to Integrity. The FDIC was appointed as receiver of Integrity on August 29, 2008, and the uncontroverted evidence shows that Appellant Curtis, a principal of Appellant Olde Towne, received a default notice from the FDIC dated October 1, 2008 in which the FDIC expressly referred to itself as "Receiver of Integrity Bank." The letter was also shared with Seymour, another principal of Olde Towne. Furthermore, Appellants do not contend that the bar date for filing claims in the administrative claims process

11

had expired by October 2008. Nor could they make such a contention, given that the bar date can be no less than 90 days after the first publication of notice of receivership to creditors, and here the first publication of notice could have been no earlier than August 29, 2008 when the FDIC was first appointed receiver.[4] See 12 USC § 1821 (d) (3) (B) (i). Consequently, Appellants' argument that they were not required to comply with the administrative exhaustion provision because of lack of proper notice from the FDIC is without merit. See *Bobick*, 321 Ga. App. at 865-866 (3) (c).

(b) Appellants contend that they were not required to comply with the administrative exhaustion provision because Multibank was prohibited from invoking the provision under Section 4.15 of the Loan Agreement between Multibank and the FDIC. That section provides:

> Section 4.15. **Use of the FDIC's Name and Reservation of Statutory Powers.** The Company [i.e., Multibank] shall not use or permit the use by its agents, successors or assigns of any name or combination of letters that is similar to "FDIC" or "Federal Deposit Insurance

---

[4] The record does not indicate when the first publication of notice of receivership to creditors was actually issued by the FDIC, but the publication obviously had to be after the FDIC was appointed as receiver for Integrity on August 29, 2008.

Corporation." The Company will not represent or imply that it is affiliated with, authorized by or in any way related to the FDIC . . . . The Company shall be entitled to assert (and claim the benefit of) the statute of limitations established under 12 USC § 1821 (d) (14). The Company acknowledges and agrees, however, that the assignment of any Loan or Underlying Collateral Document pursuant to the terms of this Agreement shall not constitute the assignment of any other rights, powers or privileges granted to the Initial Member [i.e., the FDIC as receiver] pursuant to the provisions [of] the Federal Deposit Insurance Act, including those granted pursuant to 12 USC § 1821 (d), 12 USC § 1823 (e) and 12 USC § 1825, all such rights and powers being expressly reserved by the Initial Member; nor shall the Company assert or attempt to assert any such right, power or privilege in any pending or future litigation involving any Loan transferred or purchased hereunder.

According to Appellants, because the FDIC in Section 4.15 chose not to assign to Multibank its "other rights, powers or privileges" under 12 USC § 1821 (d), Multibank cannot invoke the administrative exhaustion provision of FIRREA, 12 USC § 1821 (d) (13) (D). We are unpersuaded because the administrative exhaustion provision is a jurisdictional prerequisite binding on the courts, not a "right, power or privilege" granted to the FDIC that it can then choose whether to assign to other institutions such as Multibank.

As previously explained, 12 USC § 1821 (d) (13) (D) imposes a restriction on judicial review by the courts; if a claim falls within its ambit, "courts are divested of subject matter jurisdiction if the claimant failed to exhaust her administrative remedies before the FDIC." *Bobick*, 321 Ga. App. at 863 (3). The subject matter jurisdiction of the courts is a matter granted by law that "cannot be waived or conferred on a court by agreement." *Brine v. Shipp*, 291 Ga. 376, 377 (1) (729 SE2d 393) (2012). See OCGA § 15-1-2; *Latin American Property &c. Ins. Co. v. Hi-Lift Marina, Inc.*, 887 F2d 1477, 1479 (11th Cir. 1989). Thus, because 12 USC § 1821 (d) (13) (D) controls the subject matter jurisdiction of the courts, it is not a "right, power or privilege" that can be waived or conferred on a court by agreement of the FDIC and other institutions. It follows that the reservation of certain "rights, powers or privileges" to the FDIC in Section 4.15 of the Loan Agreement has no bearing on the application of FIRREA's administrative exhaustion provision.

Furthermore, we explained in *Bobick* that the broad language of 12 USC § 1821 (d) (13) (D) does not create a special right in favor of the FDIC in actions brought against it by a private party; "[r]ather, by its plain language, 12 U. S. C. § 1821 (d) (13) (D) refers to '*any*' claim or action and does not make its application contingent upon whom the claim is against." (Citation and punctuation omitted;

14

emphasis in original.) *Bobick*, 321 Ga. App. at 864 (3) (a). It follows that compliance with 12 USC § 1821 (d) (13) (D) is not a special "right, power or privilege" granted specially to the FDIC that it can then decide whether to assign to others; instead, it is a jurisdictional prerequisite to the hearing of a claim by the courts. For this additional reason, Section 4.15 of the Loan Agreement does not preclude the application of the administrative exhaustion provision in this case.

Our conclusion that 12 USC § 1821 (d) (13) (D) is a jurisdictional prerequisite, rather than a "right, power or privilege" reserved exclusively to the FDIC by Section 4.15 of the Loan Agreement, does not render any of the language of that contractual provision meaningless. See *Flynt v. Life of South Ins. Co.*, 312 Ga. App. 430, 435 (1) (718 SE2d 343) (2011) (noting that a contract "should not be construed in a manner that would render any of its provisions meaningless or mere surplusage"). 12 USC § 1821 (d) contains multiple subsections, many of which do in fact confer "rights, powers or privileges" upon the FDIC as receiver, such as certain rule-making powers and subpoena powers. See, e.g., 12 USC § 1821 (d) (1), (2) (I). Hence, the language in Section 4.15 reserving to the FDIC the "rights, powers or privileges" granted to it "pursuant to 12 USC § 1821 (d)" is not rendered meaningless simply because that language has no bearing on a particular subsection, 12 USC § 1821 (d) (13) (D).

For these combined reasons, we conclude that Section 4.15 of the Loan Agreement between Multibank and the FDIC does not preclude the application of FIRREA's administrative exhaustion provision in this case. The trial court therefore did not err in concluding that Appellants' affirmative defenses and proposed counterclaims were barred by that provision, and thus in granting Multibank's motion for summary judgment and denying Appellants' motion to add counterclaims.

2. In light of our decision in Division 1, we need not address Appellants' remaining enumeration of error.

*Judgment affirmed. Miller and Ray, JJ., concur.*

16