**FOURTH DIVISION**
**BARNES, P. J.,**
**BRANCH and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

July 16, 2015

# In the Court of Appeals of Georgia

A15A0458. RES-GA SCL, LLC. v. STONECREST LAND, LLC et al.

A15A1438. STONECREST LAND, LLC et al. v. RES-GA SCL, LLC.

BRANCH, Judge.

In this suit on a loan agreement, including a promissory note and associated personal guaranties, the trial court granted summary judgment in favor of the creditor, RES-GA SCL, LLC. The debtor and a guarantor appeal; RES-GA cross-appeals. For the reasons stated below, we affirm summary judgment in favor of RES-GA but reverse the trial court's decision not to award attorney fees in favor of RES-GA against one of the guarantors.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We

review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant. *Home Builders Assn. of Savannah v. Chatham County*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003).

So construed, the record shows that in March 2007, Stonecrest Land, LLC entered into a commercial promissory note with Integrity Bank in the original principal amount of $15,937,000 (with funds to be advanced as necessary) and that Thomas Brock and Wayne H. Mason agreed to guarantee Stonecrest's obligations under the note. Stonecrest obtained the two-year-term loan in order to add infrastructure and other improvements to a 63-acre tract of raw land in DeKalb County near Stonecrest Mall so that a residential community could be developed on the site. Under the "balloon" note, Stonecrest was required to make only monthly interest payments until March 30, 2009, at which time a balloon payment of all advanced principal, interest, and other loan obligations was due. But because the project was not designed to be income producing during construction, Integrity agreed in the loan documents[1] to make advances under the loan to fund the interest payments; the loan had a pre-funded "interest carry" of $1.5 million earmarked for

---

[1] The loan documents are the promissory note, loan agreement, deed to secure debt, and their subsequent amendments and modifications.

this purpose. During the term of the loan, Integrity advanced $11,937,690.58 of principal to Stonecrest, and Integrity made monthly interest advancements for the first year of the loan.

By early 2008, Integrity apparently was experiencing some financial distress, and by May 2008, it may have had concerns about Stonecrest's progress with the development. Ultimately, Integrity decided to reverse the interest advancement that it made in April 2008 and not to make any further interest advancements thereafter even though sufficient funds remained in the pre-funded "interest carry." After Integrity ceased making interest advancements, Stonecrest failed to make any interest payments required by the promissory note. And ultimately, neither Stonecrest nor the guarantors made a single payment to any of the holders of the loan documents.

In August 2008, Integrity was placed into receivership with the Federal Deposit Insurance Corporation (FDIC). On September 25, 2008, in a letter to Stonecrest, the FDIC accelerated the note "because of [Stonecrest's] failure to make timely payments." FDIC also published notice of the Integrity closure in the Atlanta Journal Constitution on September 5, 2008, October 6, 2008, and November 4, 2008. The notices are titled "FDIC NOTICE TO CREDITORS AND DEPOSITORS OF INTEGRITY BANK ALPHARETTA, GA," and they provide that "All creditors

3

having claims against the Failed Institution must submit their claims in writing, together with proof of the claims, to the [FDIC] by December 04, 2008 (the 'bar date')." As further explained below, Stonecrest did not make a such a claim. FDIC later assigned all its rights in the loan documents to Multibank 2009-1RES-ADC Venture, LLC, and on May 10, 2010, Multibank sent a demand letter to Stonecrest, Brock and Mason in an attempt to collect on the debt. Multibank later assigned all its rights in the loan documents to appellee RES-GA.

In February 2012, RES-GA filed suit against Stonecrest and the guarantors for breach of the loan documents and guaranties. Both Stonecrest and Brock (hereinafter "the defendants") answered and raised certain defenses; the claims against Mason were transferred to Gwinnett County and are therefore not before us. Following discovery, RES-GA and the defendants filed cross motions for summary judgment; following a hearing, the trial court denied both motions. After additional discovery, RES-GA renewed its motion for summary judgment and argued that the defendants' defenses to the suit were barred by federal law, namely the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 USC § 1821. RES-GA also argued that the defendants failed to raise an issue of fact regarding their defenses even if they were not so barred. On July 23, 2014, the trial court granted

summary judgment without providing specific grounds and entered final judgment

in favor of RES-GA. The court entered judgment "in the amount of $18,245,115.21,

plus per diem interest in the amount of $2,652.82 and, if appropriate, post-judgment

interest in accordance with the applicable statutes."[2] In Case No. A15A1438,

Stonecrest and Brock appeal the judgment entered against them. In Case No.

A15A0458, RES-GA appeals the trial court's failure to award attorney fees against

---

[2] The judgment amount was comprised of the unpaid principal balance of $11,937,690.58, interest of $360,700.64, "default interest" of $5,413,825.58, and escrow advances of $532,898.41. The term "default interest" is defined in the March 2007 commercial promissory note, wherein Stonecrest agreed that in the event of a default, such as failure to pay interest due under the note, it would pay an additional 4% interest on outstanding principal balance of the note:

> Interest (hereinafter referred to as "Default Interest") shall accrue on the outstanding principal balance of this Note from maturity, or sooner following the occurrence of a default hereunder and after the expiration date of any period provided for the curing of such default and for so long as such default continues, regardless of whether or not there has been an acceleration of the indebtedness evidenced hereby as set forth herein, at the rate equal to the lesser of (i) four percent (4%) per annum in excess of the applicable interest rate in effect at the time of such default, or (ii) the highest rate of interest allowable under applicable law per annum.

5

Brock based on his guaranty. These two cases have been consolidated in this Court for purposes of appeal.

*Case No. A15A1438*

1. On appeal, the defendants do not dispute that RES-GA established a prima facie right to recover under the loan documents and guaranty. Instead they contend the trial court erred by granting summary judgment in favor of RES-GA because that court failed to consider their "affirmative defenses" to RES-GA's suit. Because they are challenging the grant of summary judgment, we interpret the defendants' argument to be that their defenses are not barred by FIRREA and that there are issues of fact regarding these defenses. We conclude that the defendants have abandoned many of their defenses on appeal and that FIRREA bars the remaining defenses. Accordingly, we affirm.

(a) The defendants have abandoned consideration of many of their defenses. In their separate answers to the complaint, the two defendants raise the same 16 defenses.[3] In their appellate briefs, the defendants do not specifically refer to these

---

[3] Brock raises one defense — his "Second Defense" — not asserted as a defense by Stonecrest. This defense, in which Brock asserts that RES-GA's claims are barred by a prior pending action, is not mentioned in the defendants' appellate brief, and therefore any claim of error based on that defense has been abandoned. See Court of Appeals Rule 25 (c) (2).

6

numbered defenses, making it difficult for this court to determine which specific defenses the trial court allegedly overlooked. Construing these arguments in their favor, we find that the defendants mention, at most, ten of the sixteen defenses asserted in their answers. As numbered in Stonecrest's answer, these are defense Nos. 3, 4, 7 through 13, and 15. Thus, any argument regarding defense Nos. 1, 2, 5, 6, 14, and 16 have been abandoned. See Court of Appeals Rule 25 (c) (2).

Next, several of the ten defenses that were referred to in Stonecrest and Brock's initial brief are redundant or so similar that they can be combined and treated as one. For the purposes of this opinion, we find that the defenses arguably being pursued on appeal can be summarized as follows: (1) failure of Integrity to fund the interest advancements under the terms of the loan documents, constituting a failure of consideration and a breach of the terms of those documents thereby causing the defendants to default on their obligation to make payments on the note (hereinafter the breach of contract/failure of consideration defense); (2) failure of Integrity to perform its obligations under the loan documents in good faith, as well as breach by Integrity of an implied covenant of good faith and fair dealing, by preventing Stonecrest from performing under the loan documents (hereinafter the breach of duty of good faith defense); and (3) failure to mitigate damages. With regard to failure to

mitigate damages, however, the defendants have not attempted to show that they raised an issue of fact in the trial court, and accordingly, any assertion of error regarding that defense is also waived. Rule 25 (c) (2).

Thus, as the defendants essentially admit in their brief, the only remaining defenses are breach of contract/failure of consideration and breach of the duty of good faith. As the defendants further admit, moreover, "[s]uch defenses all stem from the failure to fund the interest reserve." Accordingly, what remains for consideration are the defendants' assertions that Integrity breached the loan documents, failed to provide consideration, or breached a duty of good faith in performing under the loan documents, all by failing to fund the interest advancements. Construing the facts in favor of the defendants, we also conclude that the defendants have raised an issue of fact regarding these preserved defenses.

(b) The primary issue presented in this appeal is whether the trial court was prohibited from asserting jurisdiction over the preserved defenses based on the defendants' failure to exhaust administrative remedies under FIRREA. The defendants argue that their preserved defenses are not subject to the FIRREA

exhaustion requirement because their defenses are properly characterized as "affirmative" defenses, which are not so barred.[4]

"FIRREA 'was enacted to strengthen regulation of the nation's financial system in the wake of the savings and loan crisis of the 1980s, and 'it grants the FDIC broad powers under 12 U.S.C. § 1821 to manage the affairs of insolvent banks as receiver or conservator.'"[5] *Bobick v. Community and Southern Bank*, 321 Ga. App. 855, 861 (3) (743 SE2d 518) (2013), quoting *Iberiabank v. Beneva 41-I, LLC*, 701 F3d 916,

---

[4] The defendants' argument that they in fact filed an administrative claim under FIRREA is belied by the record. The defendants were required to file a claim with the receiver by December 4, 2008, the bar date. 12 U.S.C. § 1821 (d) (3) (B) (i); 12 CFR §§ 380.34. The defendants have only cited one letter sent to Integrity, not the FDIC as required, and a second letter sent after the bar date. "[C]laims filed after the [claims bar date] shall be disallowed and such disallowance shall be final." 12 U.S.C. § 1821 (d) (5) (C) (i). The only exception to the timeliness requirement is when "the claimant did not receive notice of the appointment of receiver in time to file such a claim before such date." 12 U.S.C. § 1821(d) (5)(C)(ii)(I); see also *Rundgren v. Washington Mut. Bank, FA*, 760 F3d 1056, 1060 (II) (9th Cir. 2014). Here, Stonecrest received notice of the appointment of the receiver on September 25, 2008, well before the bar date.

[5] The FDIC *as receiver* is given the authority to "place the insured depository institution in liquidation and proceed to realize upon the assets of the institution, having due regard to the conditions of credit in the locality." 12 U.S.C. § 1821 (d) (2) (E) (2000). The FDIC *as conservator* may take such action as may be "(i) necessary to put the insured depository institution in a sound and solvent condition; and (ii) appropriate to carry on the business of the institution and preserve and conserve the assets and property of the institution." 12 U.S.C. § 1821 (d) (2) (D) (2000).

9

921 (II) (A) (11th Cir. 2012). FIRREA has its own administrative claims process for claims against failed banks:

> The Act also created an administrative process for addressing claims against failed banks for which the FDIC has been appointed as receiver. Pursuant to that process, the FDIC is authorized to determine claims against a failed bank under procedures established by the Act.

*Gravitt v. Bank of the Ozarks*, 326 Ga. App. 461, 466 (2) (756 SE2d 695) (2014) (citations omitted). FIRREA also established limits on judicial review of such claims. Id. In this regard, FIRREA eliminates jurisdiction in all courts over specified types of claims and actions:

> Except as otherwise provided in this subsection, no court shall have jurisdiction over —
>
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets[6] of any depository institution for which the [FDIC] has been appointed receiver, including assets which the [FDIC] may acquire from itself as such receiver; or
>
> (ii) any claim relating to any act or omission of such institution or the [FDIC] as receiver.

___

[6] An outstanding loan is an asset of a bank. *Freeman v. F.D.I.C.*, 56 F3d 1394, 1400 (II) (B) (D.C. Cir. 1995) (loan issued by failed institution to debtors was an asset of that bank).

10

12 USC § 1821 (d) (13) (D). The only exception provided in the subsection is that courts have jurisdiction to review claims that have been presented in the FIRREA claims process. 12 USC § 1821 (d) (6) (A); *Placida Professional Ctr. v. F.D.I.C.*, 512 F. Appx. 938, 945 (11th Cir. 2013). Our Court has adopted the reasoning of the Eleventh Circuit, which is shared by other circuit courts, that "the limitation on judicial review imposed by 12 U.S.C. § 1821 (d) (13) (D) [ ] establish[es] an administrative exhaustion requirement." *Bobick*, 321 Ga. App. at 862, citing *Interface Kanner, LLC v. JPMorgan Chase Bank, N.A.*, 704 F3d 927, 934 (III) (B) (11th Cir.2013); see also *Tri-State Hotels v. F.D.I.C.*, 79 F3d 707, 715 (B) (8th Cir. 1996); *Freeman v. FDIC*, 56 F3d 1394, 1400 (II) (B) (D. C. Cir. 1995); *Nat. Union Fire Ins. Co. of Pittsburgh, Pa. v. City Sav., F.S.B.*, 28 F3d 376, 383 (B) (3d Cir. 1994). "Accordingly, if a claim or counterclaim falls within the scope of 12 USC § 1821 (d) (13) (D), courts are divested of subject matter jurisdiction if the claimant failed to exhaust his or her administrative remedies before the FDIC." *Gravitt*, 326 Ga. App. at 467 (2) (citation and footnote omitted). Finally, the Eleventh Circuit and other circuits have held that an entity such as RES-GA that purchases a failed lending institution's promissory note or other assets from the receiver "stands in the shoes of the [receiver] and acquires its protected status under FIRREA," at least for claims

11

arising out of the actions of the failed institution or the FDIC. *American First Fed. v. Lake Forest Park*, 198 F3d 1259, 1263 (B), n. 3 (11th Cir.1999) (citaiton omitted); see also *Benson v. JPMorgan Chase Bank, N.A.*, 673 F3d 1207, 1209 (9th Cir. 2012); *Village of Oakwood v. State Bank and Trust Co.*, 539 F3d 373, 386 (III) (C) (2) (6th Cir. 2008). Thus, RES-GA is authorized to argue that it is protected by FIRREA's administrative exhaustion requirement.[7]

Based on the language of 12 USC § 1821 (d) (13) (D), quoted above, the Eleventh Circuit and other circuit courts have held, "affirmative defenses are not subject to the requirements of exhaustion under [USC §] 1821 (d) (13) (D)." *Lake Forest*, 198 F3d at 1264 (B), and cases cited therein. In *Lake Forest*, the Eleventh Circuit quoted the Third Circuit who parsed the plain language of USC § 1821 (d) (13) (D) to conclude that it divests courts of jurisdiction "over requests for relief" that can be characterized as:

---

[7] In their initial appellate brief, Stonecrest and Brock do not dispute that RES-GA is Integrity's successor-in-interest to the loan documents at issue in this action. But in their reply brief, the defendants attempt to argue that RES-GA is not authorized to assert the receiver's defense of failure to exhaust FIRREA administrative remedies. This argument is not timely. "[T]his Court will not consider arguments raised for the first time in a reply brief." *Barron v. Wells Fargo Bank, N.A.*, 332 Ga. App. 180, 187 (4) (769 SE2d 830) (2015) (citation omitted).

(1) claims for payment from assets of any depository institution for which the RTC has been appointed Receiver;

(2) actions for payment from assets of such depository institutions;

(3) actions seeking a determination of rights with respect to the assets of such depository institutions; and

(4) a claim relating to any act or omission of such institution or the RTC as receiver.

Id. at 1263, quoting *National Union*, 28 F3d at 393 (II) (B) (3). After agreeing with other circuits that conclude that all requests for relief falling into these categories, whether asserted as claims or counterclaims, are subject to the exhaustion requirement, the Eleventh Circuit again adopted the Third Circuit's reasoning that the statute's use of the terms "claims" and "actions" precluded application of the jurisdictional bar to "true affirmative defenses," i.e., "'a response to a plaintiff's claim which attacks the plaintiff's *legal* right to bring an action.'" Id. at 1264 (B), quoting Black's Law Dictionary (6th ed.1991) (emphasis in original). Following this reasoning, Stonecrest and Brock argue that their preserved defenses are true affirmative defenses not subject to FIRREA's exhaustion requirement.

Even if true affirmative defenses are not barred by the FIRREA exhaustion doctrine, however, as explained by the Eleventh Circuit, simply naming something

13

an affirmative defense does not determine whether a request for relief is a true affirmative defense or is, in fact, a claim or action encompassed by FIRREA:

> a court must look beyond the nomenclature of a request for relief to ascertain whether it is a true affirmative defense or is, in actuality, a claim requiring exhaustion as a prerequisite to jurisdiction. Whether a request for relief is titled an affirmative defense or a counterclaim is not dispositive to the question of subject matter jurisdiction. The germane question is whether the remedy sought by a party, regardless of its label, is encompassed by Section 1821 (d) (13) (D), that is, *whether the assertion is in reality a claim against the assets or actions of the failed institution or the [FDIC] as receiver*.

*Lake Forest*, 198 F3d at 1264-1265 (B) (emphasis supplied). For example, *Lake Forest* involved a $9 million construction/development loan, the terms of which required Lake Forest to obtain a letter of credit to ensure the availability of funds for certain expenses related to the development. Id. at 1261. In exchange for the letter of credit, Lake Forest signed a promissory note payable on demand to Professional Savings Bank; two individuals guaranteed the note. Id. After the entire line of credit had been exhausted thereby causing an insurer to refuse to insure the construction loan, Professional, the successor-in-interest to the original lender on the construction loan, refused to fund the remaining $793,325 balance of that loan. Id. at 1263 (B).

14

Professional later went into receivership and the Resolution Trust Corporation (RTC) was appointed receiver. The RTC then sold the note and rights thereunder to American First Federal (AFF). Id. at 1261. When AFF later brought suit against Lake Forest on the promissory note, Lake Forest counterclaimed, "asserting that Professional had wrongfully failed to release the balance of the construction loan proceeds, thereby causing Lake Forest to default on the promissory note." Id. Lake Forest sought to offset any recovery awarded to AFF on the note with the damages flowing from Professional's failure to fund the loan. Id. The district court refused to consider the set-off claim because Lake Forest had not exhausted its administrative remedies under FIRREA. Id.

On appeal, the Eleventh Circuit affirmed the trial court's decision to allow Lake Forest to re-designate its counterclaim as an "affirmative defense." Id. at 1263 (B). Nevertheless, the circuit court proceeded to examine Lake Forest's "affirmative defense" to determine whether it should be disallowed because Lake Forest failed to pursue the matter under FIRREA's administrative process. Id. The court concluded that "Lake Forest's claim for damages stemming from Professional's refusal to fund the balance of the construction loan is clearly a claim against the assets of the failed institution rather than a defense which attacks AFF's legal right to bring the action."

15

Id. at 1265 (B). Thus, because Lake Forest did not pursue its set-off claim under FIRREA, the trial court did not have jurisdiction to consider Lake Forest's so-called "affirmative defense." Id.

(c) Here, the defendants' preserved defenses are not true affirmative defenses under *Lake Forest*. In the pre-trial order, the defendants assert that as a result of Integrity's breach of contract, failure of consideration, and breach of the duty of good faith in performing the contract the defendants are entitled either (i) to offset their damages against the plaintiff's damages or (ii) to complete relief from their obligations under the note and guaranty.

(i) The defense claims that seek a determination of damages caused by Integrity as a means of offsetting the defendants' own damages constitute claims for recoupment. "Recoupment is a right of the defendant to have a deduction from the amount of the plaintiff's damages for the reason that the plaintiff has not complied with the cross-obligations or independent covenants arising under the contract upon which suit is brought." OCGA § 13-7-2. "Recoupment may be pleaded in all actions ex contractu where the plaintiff is liable to the defendant under the same contract. If the damages of the defendant exceed those of the plaintiff, the defendant shall be awarded the amount of such excess from the plaintiff." OCGA § 13-7-13. A claim of

16

setoff is similar but involves two separate transactions.[8] Under Georgia law, "both setoff and recoupment are considered counterclaims." *Hill v. Green Tree Servicing*, 280 Ga. App. 151, 154 (2) (633 SE2d 451) (2006) (footnote omitted); *Baxter v. Fairfield Fin. Svcs.*, 307 Ga. App. 286, 295 (4) (704 SE2d 423) (2010) (punctuation and footnote omitted); *French Quarter, Inc. v. Peterson Young Self & Asselin*, 220 Ga. App. 852, 854 (3) (471 SE2d 9) (1996). And "[w]hen a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleadings as if there had been a proper designation." OCGA § 9-11-8 (c). Because the defendants' defenses seek, at least in part, a determination of damages caused by Integrity as a means of offsetting the defendants' own damages, they are properly designated as counterclaims of recoupment.

---

[8] "Setoff does not operate as a denial of the plaintiff's claim; rather it allows the defendant to set off a debt owed him by the plaintiff against the claim of the plaintiff." OCGA § 13-7-1. "Recoupment differs from setoff in this respect: Any claim or demand the defendant may have against the plaintiff may be used as a setoff, while only a claim or demand arising out of the same transaction as that sued on by the plaintiff may be used as a recoupment." OCGA § 13-7-3. "Although there are distinctions between the two terms, they are frequently used interchangeably." *Gwinnett Commercial Bank v. Flake*, 151 Ga. App. 578, 580 (1) (260 SE2d 523) (1979) (citation omitted).

17

The defendants' recoupment counterclaims are barred by failure to pursue them under FIRREA's administrative claims process. As already shown, FIRREA bars a court from taking jurisdiction over "any claim or action for payment from. . . the assets of any depository institution for which the [FDIC] has been appointed receiver." 12 USC § 1821 (d) (13) (D). Because the defendants' so-called affirmative defenses are, at least in part, properly characterized as counterclaims in which they seek payment from the assets of Integrity, they are claims that are subject to the FIRREA administrative claims process. See *Interface Kanner*, 704 F3d at 934 (III) (B); *Lake Forest*, 198 F3d at 1263-1264; *Tri-State*, 79 F3d at 713 (III) (B); *F.D.I.C. v. Stovall*, __ FSupp __, 2014 WL 8251465, at *9 (N.D. Ga. Oct. 2, 2014); *Bobick*, 321 Ga. App. 855, 864 (3) (a). Thus, Stonecrest and Brock's defensive claims of recoupment are barred by the defendants' failure to exhaust administrative remedies under FIRREA.

(ii) The defendants also contend they have asserted an affirmative defense by arguing that Integrity's alleged breach of the loan document entitles the defendants to be excused from liability under the note. This assertion is either also barred by 12 USC § 1821 (d) (13) (D) or altogether without merit. First, it is undisputed that the agreement between the parties was partially performed. Integrity disbursed

18

approximately $12,000,000 in principal to Stonecrest and made monthly interest advancements for the first year of the loan, none of which has been repaid by Stonecrest. Furthermore, Stonecrest never sought to rescind the agreement as a result of Integrity's alleged breach. Thus, the alleged breach of the agreement or failure of consideration by Integrity was, at most, partial. The remedy for any purported partial failure of consideration or partial breach of contract is an offset of damages and is therefore properly characterized as a claim for recoupment and barred by FIRREA as shown above. Second, even if the defendants' argument is otherwise legally sound, which we do not decide,[9] "[b]efore partial failure of performance of one party will excuse the other from performing his contract or give him a right of rescission, the act failed to be performed must go to the root of the contract." *Chamberlin v. Booth*

---

[9] See *McIntosh v. McLendon*, 162 Ga. App. 220 (2) (290 SE2d 157) (1982) ("Although the facts alleged by the defendant in his answer might support a counterclaim for breach of contract, they do not set forth a defense to the note, which constitutes by its terms an unconditional promise to pay the instrument according to its tenor."); *Park v. Fortune Partner, Inc.*, 279 Ga. App. 268, 272 n. 1 (630 SE2d 871) (2006) ("The defendants characterize Fortune's alleged breach of the sales contract as a 'defense' to payment on the note, but the alleged breach may be more accurately asserted as the basis for a claim of recoupment or counterclaim."); but see *Lowery v. Dallis*, 237 Ga. App. 309, 311 (2) (513 SE2d 740) (1999) (treating breach of asset purchase agreement as a defense to suit on promissory note given in exchange for purchased assets).

19

*& McLeroy*, 135 Ga. 719 (70 SE 569) (1911). Here, Integrity's failure to make interest advancements under the loan agreement does not go to the root of the contract being enforced in this action, i.e., the promissory note. Rather, it pertains to the loan agreement and only to that part of the loan agreement under which Integrity agreed to make interest advancements. Indeed, the note provides that no provisions of the loan agreement "shall in any manner affect or impair the absolute and unconditional obligation of Maker to pay the outstanding principal balance hereof and unpaid accrued interest hereon as the same shall become due and payable." Thus, this argument by the defendants is without merit.

Accordingly, all of the defendants' preserved defenses are barred by 12 USC § 1821 (d) (13) (D) or wholly without merit.

(d) The defendants contend that any bar of their defenses would violate the Due Process clause of the United States Constitution. They raise several arguments in this regard.

(i) They first argue briefly that because FIRREA provides that notice of the claims process shall be provided to "creditors," it would violate due process to enforce the jurisdictional bar against debtors, such as the defendants, to whom notice is not required under FIRREA. But a review of the law shows that this position has

20

been rejected based on the language of the statute itself. See *McCarthy v. F.D.I.C.*, 348 F3d 1075, 1077 (2) (9th Cir. 2003); *Tri-State*, 79 F3d at 714 (D); *Freeman v. F.D.I.C.*, 56 F3d 1394, 1400 (DC Cir. 1995); *National Union*, 28 F3d at 385-389 (B) (2). FIRREA provides an exception to timely exhaustion only where the claimant can show that it did not "receive notice of the appointment of the receiver in time to file [a] claim." 12 USC § 1821 (d) (5) (C) (ii) (I); see also *Olde Towne Tyrone v. Multibank 2009-1 CRE Venture*, 326 Ga. App. 322, 327-328 (1) (a) (756 SE2d 558) (2014) (citation omitted); *Freeman*, 56 F3d at 1401-1403 (II) (B). Here, on September 25, 2008, the FDIC sent a letter to the defendants informing them that the FDIC was the "Receiver of Integrity Bank." The defendants therefore have not shown a violation of due process on this ground.

(ii) The defendants argue that the anti-injunction provision of FIRREA may bar the type of relief — declaratory — that they would have to seek by way of an administrative claim under FIRREA for the types of relief they seek in this suit. In other words, they argue that RES-GA's interpretation of FIRREA violates due process because it might bar the very type of administrative claim that the defendants would have to bring if they had chosen to do so. But, as the defendants admit, the Eleventh Circuit has recently ruled that even if a claimant files an administrative

21

claim that is barred by FIRREA's anti-injunction provision, having then exhausted administrative remedies under FIRREA, the claimant is free to file a suit in court and raise the issue barred in the administrative proceeding. *Placida*, 512 F. App'x at 945. Moreover, in this case the defendants did not file a declaratory judgment claim under the FIRREA claims process, and therefore this issue is not presently before us.

(iii) The defendants further argue that enforcement of FIRREA's exhaustion requirement against them would lead to "patently absurd consequences" like requiring them to file defenses before having notice of the claims being asserted against them. First, as shown above, true affirmative defenses are not barred by the FIRREA exhaustion requirement. Second, by the time that the FDIC was appointed as a receiver, the defendants were fully aware that Integrity had ceased making interest advancements under the loan, which is what they contend triggered their defenses. Thus no patently absurd consequences result from this opinion.

In sum, the defendants' attempt to raise a due process violation fails.

2. The defendants also contend the trial court erred as a matter of law by awarding default interest on the judgment in favor of RES-GA because Integrity failed to give notice of non-monetary default when it decided to cease making interest advancements and, as a result, the FDIC improperly accelerated the note. For the

22

same reasons stated above, these assertions of improper actions by Integrity and the FDIC are barred by the FIRREA exhaustion doctrine. They seek a determination of rights with respect to an asset (the loan) of a failed bank for which the FDIC was appointed as a receiver, which is encompassed in OCGA § 1821 (d) (13) (D), and this defense not a true affirmative defense.

3. Finally, we affirm the trial court's grant of summary judgment against Brock for the separate reason that in his guaranty, he clearly waived all defenses to this suit. The guaranty provides that:

> No act, failure to act, or omission of any kind on the part of the Undersigned, the Principal, the Bank or any other person shall be a legal or equitable discharge or release of the Undersigned from their obligation hereunder unless agreed to hereafter in writing by the Bank.

In the guaranty, Brock also waived and renounced "any defense to any of the liabilities which may be available to or could be asserted by the Principal, except for payment." Brock's waiver of defenses is enforceable. *Roberts v. Community & Southern Bank*, 331 Ga. App. 364, 367 (1) (771 SE2d 68) (2015); see also *Community & Southern Bank v. DCB Investments*, 328 Ga. App. 605, 610 (2)(760 SE2d 210) (2014) ("[A] guarantor may consent in advance to a course of conduct which would

23

otherwise result in his discharge, and this includes the waiver of defenses otherwise available to a guarantor.") (citation and footnote omitted).

*A15A0458*

4. In the cross-appeal, RES-GA contends the trial court erred by failing to award it attorney fees against Brock under the terms of his guaranty. We agree.

Brock's guaranty provides:

> If any legal action or actions are instituted by the Bank to enforce any of its rights against the Undersigned hereunder, then the Undersigned, jointly and severally, agree to pay the Bank all expenses incurred by the Bank relative to such legal action or actions, including, but not limited to, court costs plus 15% of the total amount of the principal and accrued interest then due the Bank hereunder as attorney's fees.

On September 25, 2008, after Integrity was placed into receivership with the FDIC, the FDIC sent a letter to Brock stating that it held the note and that unless Brock paid in full within ten days of receipt of the letter, the FDIC intended to seek attorney fees and costs of collection:

> As you know, the FDIC is the holder of the Note. . . . Unless the Amounts Due [defined to include principal, interest and other amounts owed on the loan] are paid in full within 10 days of your receipt of this letter the FDIC may turn this matter over to counsel to initiate collection

24

activities and you will also become liable for attorney fees and costs of collection.[10]

And on May 10, 2010, Multibank sent a letter to Brock, which Brock received, that provided essentially the same notice:

> [Multibank] is the owner of the Loan and all of the documents that evidence and secure the Loan. . . . [P]ursuant to O.C.G.A. Section 13-1-11, you are hereby notified of Lender's intention to recover attorneys' fees and costs of collection. You are also notified that you have the opportunity to pay the indebtedness within ten (10) days of your receipt (whether actual or constructive) of this letter to avoid the additional liability of attorneys' fees and costs of collection.

In its complaint, RES-GA demanded recovery of the attorney fees provided in the guaranty, but it did not inform Brock that he had ten days from the receipt of the complaint to pay the principal and interest to avoid attorney fees. In its order granting summary judgment in favor of RES-GA, the trial court did not award attorney fees. In addressing this aspect of the trial court's order granting summary judgment, we again apply the de novo standard of review. *Long v. Hogan*, 289 Ga. App. 347 (656 SE2d 868) (2008).

---

[10] On January 8, 2009, the FDIC sent a second demand letter to Brock, but the copy in the record does not show the complete language of the attorney fee demand.

RES-GA travels under OCGA § 13-1-11 (a) which provides:

> Obligations to pay attorney's fees upon any note or other evidence of indebtedness, in addition to the rate of interest specified therein, shall be valid and enforceable and collectable as a part of such debt if such note or other evidence of indebtedness is collected by or through an attorney after maturity.

And "[a] guaranty contract is an 'evidence of indebtedness' within the meaning of [the statute]." *RadioShack Corp. v. Cascade Crossing II*, 282 Ga. 841, 845 (653 SE2d 680) (2007) (citation omitted). If the statutory prerequisites are met, an award is mandatory:

> where a party complies with the requirements of OCGA § 13-1-11, the party is entitled to receive statutory attorney fees. Because the language of the statute is mandatory rather than permissive, we further hold that the trial court is without discretion to deny fees under section 13-1-11 when all the conditions of that statute are unquestionably satisfied.

*TermNet Merch. Svcs. v. Phillips*, 277 Ga. 342, 344-345 (1) (588 SE2d 745) (2003) (footnote omitted).

(a) Brock contends that the notices set forth above do not comply with the statute because notice must be given "after maturity of the obligation," OCGA § 13-1-11; Brock argues that RES-GA's calculation of the maturity date in this case is flawed

because Integrity failed to give notice of non-monetary default in May 2008 and therefore the declaration of default and acceleration of the debt in September 2008 was not proper. But again, this argument is based on Stonecrest's defense that Integrity breached the loan documents, which is barred by FIRREA. Moreover, Brock waived all defenses that Stonecrest could assert except payment. Here, on May 10, 2010, Multibank demanded payment on the note and gave statutory notice of intent to collect attorney fees, all after the note matured, yet Brock has failed to make any payment on his unconditional guaranty. "[N]otice under this statute may be given any time between the maturity of the obligation and ten days prior to judgment." *Lockwood v. Fed. Deposit Ins. Corp.*, 330 Ga. App. 513, 515-516 (1) (767 SE2d 829) (2014). We find no error on this ground.

(b) Brock contends that RES-GA is not entitled to the amount of fees it seeks because it is not entitled to default interest because of Integrity's improper acceleration of the note. But as shown above, the trial court did not err by awarding default interest under the note, Brock has waived all defenses, and the specific defenses asserted are barred by FIRREA.

(c) Finally, Brock contends that the trial court did not err because neither the May 10, 2010 demand letter from Multibank nor the earlier demand letter from the

27

FDIC identify RES-GA as the party who would be seeking attorney fees, i.e., the party filing suit. RES-GA argues that the FDIC and Multibank notices met the statutory requirements.[11]

> The notice clause of OCGA § 13-1-11 provides,
>
> The holder of the note or other evidence of indebtedness or his or her attorney at law shall, after maturity of the obligation, notify in writing the maker, endorser, or party sought to be held on said obligation that the provisions relative to payment of attorney's fees in addition to the principal and interest shall be enforced and that such maker, endorser, or party sought to be held on said obligation has ten days from the receipt of such notice to pay the principal and interest without the attorney's fees. If the maker, endorser, or party sought to be held on any such obligation shall pay the principal and interest in full before the expiration of such time, then the obligation to pay the attorney's fees shall be void and no court shall enforce the agreement.

OCGA § 13-1-11 (a) (3). Thus, as this Court has explained, a proper demand notice "must as a matter of substance: (1) be in writing; (2) to the party sought to be held on

---

[11] RES-GA does not argue that it provided proper notice in its complaint; nor can it. See *Shier v. Price*, 152 Ga. App. 593, 595 (2) (263 SE2d 466) (1979) (notice in complaint in accordance with OCGA § 13-1-11 "that the provision for 10% attorney fees in the note would be enforced if the principal and interest owing thereon were not received within ten days . . . is a proper notice."); see also *Lockwood v. Fed. Deposit Ins. Corp.*, 330 Ga. App. 513, 515 (1) n. 7 (767 SE2d 829) (2014), and cases cited therein.

28

the obligation; (3) after maturity; (4) [ ] state that the provisions relative to payment of attorney fees in addition to principal and interest will be enforced; and (5) [ ] state that the party has ten days from the receipt of such notice to pay the principal and interest without the attorney fees." *Trust Assoc. v. Snead*, 253 Ga. App. 475, 476 (1) (559 SE2d 502) (2002) (citations omitted). Also, the notice must be sent by the holder of the note. *Krapf v. Wiles*, 252 Ga. 452, 453 (314 SE2d 656) (1984). Only substantial compliance with OCGA § 13-1-11 (a) (3) is required for most of these elements, *Brzowski v. Quantum Nat. Bank*, 311 Ga. App. 769, 774 (3) (a) (717 SE2d 290) (2011), but strict compliance applies to the requirement that the note holder must send the notice, *Krapf*, 252 Ga. at 453, which requirement is satisfied in this case because the FDIC and Multibank both held the note at the time they provided the relevant notice.

As can be seen, nothing in the plain language of the statute requires that the notice indicate the name of the party that would be filing suit if the defendant failed to pay the principal and interest within the ten-day period provided in the notice. In other words, the statute does not address whether an assignee of the note may recover attorney fees where the assignee's predecessor in interest provided the notice required by OCGA § 13-1-11 but the assignee filed suit.

29

In 1984 and 2002, respectively, the Supreme Court and this Court quoted earlier case law for the proposition that the notice must indicate who intends to file suit:

> "'Statutory notice for the purpose of fixing liability for attorney's fees should disclose who is the holder of the note, *and who it is that intends to bring suit*, and to whom the payment should be made; and if notice is so worded as to mislead or as to be likely to mislead the defendant in material respects as to these features, it is inadequate.'"

See *Krapf*, 252 Ga. at 453, quoting *Gelders v. Kennedy*, 9 Ga. App. 389, 390 (71 SE 503) (1911) (emphasis supplied); *Snead*, 253 Ga. App. at 476 (1) (a) (same quotation). The quotations in both *Krapf* and *Snead* are dicta,[12] however, and both rely on much earlier cases that were decided when the notice provision of the statute required that the holder of the note provide notice "of his intention to bring suit." See Civil Code 1910, § 4252; *Miller v. Roberts*, 9 Ga. App. 511, 514 (71 SE 927) (1911). See, e.g., *Baskins v. Valdosta Bank & Trust Co.*, 5 Ga. App. 600, 601 (63 SE 648) (1909) (notice insufficient where it failed, among other things, to indicate that an

___

[12] *Krapf* addressed whether notice of intent to enforce an attorney fees provision must be sent by the holder of the note. *Krapf*, 252 Ga. at 453. *Snead* addressed a notice that failed to identify the notes and the note holder and failed to specify that the maker could make payment within 10 days to avoid payment. *Snead*, 253 Ga. App. at 476.

assignee would be filing suit). The quotations in *Krapf* and *Snead*, therefore, are not controlling. And we have not found any other case law addressing the question before us under the current statute.

Because the notice provision of OCGA § 13-1-11 does not provide that the required notice indicate who will be filing suit, we conclude that a subsequent assignee of the note may file suit and collect attorney fees if a predecessor in interest has provided proper notice. Looking back to the notice provision of the statute and the notices provided in this case, we conclude that proper statutory notice was given twice, that Brock failed to pay within ten days of either proper notice, and that RES-GA is therefore authorized to collect attorney fees. We therefore reverse the trial court's decision not to award fees and remand for entry of a fee award in accordance with the terms of the promissory note as governed by OCGA § 13-1-11.

In conclusion, we affirm summary judgment in favor of RES-GA but reverse the trial court's decision not to award attorney fees in favor of RES-GA and against Brock.

*Judgment affirmed in case No. A15A1438. Judgment reversed in case No. A15A0458. McMillian, J., concurs. Barnes, P. J., concurring specially.*

31

BARNES, Presiding Judge, concurring specially.

While I concur fully in Divisions 1, 3, and 4 of the majority opinion and with the judgment, I do not agree with the majority's analysis and conclusion in Division 2 regarding the application of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821.[1] In my view, the defendant's challenge to the plaintiff bank's entitlement to "default interest" is a basic defense that is not subject to FIRREA's administrative exhaustion requirement. Thus, in contrast to the majority, I would conclude that the defendants' challenge to a "default interest" award can be asserted in this litigation, although I would conclude that such a challenge fails on the merits as a matter of law.

As the majority notes, FIRREA imposes an administrative exhaustion requirement on all claims and actions that fall within the ambit of 12 U.S.C. § 1821 (d) (13) (D). See *Gravitt v. Bank of the Ozarks*, 326 Ga. App. 461, 466 (2) (756 SE2d

---

[1] Consequently, Division 2 of the majority opinion may not be cited as binding precedent. See Court of Appeals Rule 33 (a).

695) (2014); *Olde Towne Tyrone, LLC v. Multibank 2009-1 CRE Venture, LLC*, 326

Ga. App. 322, 325-326 (1) (756 SE2d 558) (2014); *Bobick v. C. & S. Bank*, 321 Ga.

App. 855, 862 (3) (743 SE2d 518) (2013). See also *American First Fed., Inc. v. Lake*

*Forest Park, Inc.*, 198 F3d 1259, 1263-1264 (11th Cir. 1999). The exhaustion

requirement applies to requests for relief properly characterized as:

> (1) claims for payment from assets of any depository institution for
> which the FDIC has been appointed Receiver;
>
> (2) actions for payment from assets of such depository institutions;
>
> (3) actions seeking a determination of rights with respect to the assets
> of such depository institutions; and
>
> (4) claims relating to any act or omission of such institution or the FDIC
> as receiver.

(Punctuation omitted.) *Bobick*, 321 Ga. App. at 862 (3) (quoting *American First*

*Fed.*, 198 F3d at 1263). "Moreover, all claims falling within 12 U.S.C. § 1821 (d)

(13) (D) are subject to the exhaustion requirement regardless of whether they are

asserted as initial claims or as counterclaims," and, therefore, "if a claim or

counterclaim falls within the scope of [the statute], courts are divested of subject

matter jurisdiction if the claimant failed to exhaust his or her administrative remedies

2

before the FDIC." (Citation and punctuation omitted.) *Gravitt*, 326 Ga. App. at 467 (2). See *Bobick*, 321 Ga. App. at 862-863 (3).

Unlike counterclaims, affirmative defenses generally are not subject to the administrative exhaustion requirement. See *Bobick*, 321 Ga. App. at 867 (3) (e). "An affirmative defense is a response to a plaintiff's claim which attacks the plaintiff's legal right to bring an action. A counterclaim, in contrast, seeks some type of affirmative relief against the plaintiff." (Citations and punctuation omitted.) Id.

Additionally, although we have not been called upon to address the issue, basic defenses to a lawsuit, even if they do not technically constitute affirmative defenses, fall outside the exhaustion requirement imposed by 12 U.S.C. § 1821 (d) (13) (D). In *National Union Fire Ins. Co. of Pittsburgh, Pa. v. City Savings*, 28 F3d 376, 393 (3d Cir. 1994), the Third Circuit Court of Appeals addressed the scope of the exhaustion requirement and, in doing so, explained the difference between a basic defense and an affirmative defense:

Black's Law Dictionary defines "defense," in relevant part, as follows:

That which is offered and alleged by the party proceeded against in an action or suit, as a reason in law or fact why the plaintiff should not recover or establish what he seeks. That which is put

3

forward to diminish plaintiff's cause of action or defeat recovery.
. . .

. . . .

A response to the claims of the other party, setting forth reasons why the claims should not be granted. The defense may be as simple as a flat denial of the other party's factual allegations or may involve entirely new factual allegations. In the latter situation, the defense is an affirmative defense.

"Affirmative defense" is defined in more detail as follows:

In pleading, matter asserted by defendant which, assuming the complaint to be true, constitutes a defense to it. A response to a plaintiff's claim which attacks the plaintiff's [legal] right to bring an action, as opposed to attacking the truth of claim. Under the [Federal] Rules of Civil Procedure, and also under most state Rules, all affirmative defenses must be raised in the responsive pleading (answer).

(Emphasis omitted.) Id. at 393 (quoting Black's Law Dictionary 60, 419 (6th ed. 1990)). The Third Circuit reasoned "that a defense or affirmative defense is not properly called an 'action' or a 'claim' but is rather a *response* to an action or a claim," and that, as a result, neither basic defenses nor affirmative defenses are

4

subject to the exhaustion requirement imposed by 12 U.S.C. § 1821 (d) (13) (D). (Emphasis in original.) *National Union Fire Ins. Co.*, 28 F3d at 393.

Both this Court and the Eleventh Circuit have previously relied upon the Third Circuit's reasoning in *National Union Fire Ins. Co.* to ascertain the meaning of "claim" and "action" under 12 U.S.C. § 1821 (d) (13) (D), and we should do so again here and recognize that both basis and affirmative defenses are not subject to administrative exhaustion. See *American First Fed.*, 198 F.3d at 1263; *Bobick*, 321 Ga. App. at 862 (3). The pertinent question in this case thus is whether the defendants' contentions are properly characterized as counterclaims (which are subject to administrative exhaustion), or as basic or affirmative defenses (which are not subject to administrative exhaustion).

In outlining their contentions in the consolidated pretrial order, the defendants contend that Integrity failed to provide them with proper notice of their alleged default on the loan, eliminating or reducing any award of "default interest" to RES-GA SCL, LLC. In my view, the defendants' contention that RES-GA should be denied all or part of its request for "default interest" should be characterized as a basic defense rather than as a counterclaim. The defendants' contention is merely an argument over the amount and type of damages RES-GA should be entitled to recover

5

on its claims for breach of the note and guaranty. In other words, it is simply an effort by the defendants to explain "why [RES-GA] should not recover or establish what [it] seeks" and to "diminish [RES-GA's] cause of action," and thus should be construed as a basic defense falling outside the scope of the exhaustion requirement. (Citation and punctuation omitted.) *National Union Fire Ins. Co.*, 28 F3d at 393.

For this reason, the trial court erred to the extent that it granted summary judgment to RES-GA on the ground that the defendants' basic defense to the amount and type of damages RES-GA sought to recover was barred by FIRREA's administrative exhaustion requirement imposed by 12 U.S.C. § 1821 (d) (13) (D). Nevertheless, it is well-established that a trial court's grant of summary judgment will be affirmed if right for any reason. See *Dan J. Sheehan Co. v. Fairlawn on Jones Homeowners' Assn.*, 312 Ga. App. 787, 790 (1), n. 11 (720 SE2d 259) (2011). RES-GA also moved for summary judgment on the alternative ground that the defendants' defenses, including their challenge to an award of "default interest," failed on the merits as a matter of law. My review of the record leads me to conclude that RES-GA is right in this respect and, therefore, I believe that the trial court's grant of summary judgment to RES-GA should be affirmed, as the majority ultimately concludes.